## 64762. INGLE v. SWISH MANUFACTURING SOUTHEAST, INC. et al.

BIRDSONG, Judge.

The appellant Ingle is a pilot who survived a plane crash and subsequently brought suit for damages against the repair facility which had recently worked on the plane (The Garrett Corporation) and against the owner of the plane (Swish Manufacturing). On the first day of trial, appellee Garrett filed a motion to dismiss Count 3 of Ingle's complaint, which essentially alleged fraud of Garrett in disposing of the wrecked plane and its parts, particularly the fuel gauge, which motion the trial court granted. After nearly three days of plaintiff's testimony and evidence, the trial court granted a directed verdict to each defendant as to the remaining counts of the complaint. Appellant complains of these and other actions of the trial court, essentially enumerating 19 errors.

The evidence shows that the subject MU-2 plane, a sophisticated aircraft, was owned by Swish and used by it for its own corporate purposes and to lease out to others on a charter basis. Appellant Ingle was employed on a regular basis to pilot this aircraft for Swish and for some charter flights. Appellant Ingle was a former military pilot, a professional commercial pilot, a flight instructor, an F.A.A. flight examiner, and an "instructor of instructors." He was F.A.A. accident prevention counselor for Central Georgia. He held commercial pilot, instrument and multi-engine licenses. He attended a school operated by the MU-2 manufacturer specifically to learn how to operate this aircraft.

In 1976, the MU-2 was leased by Swish to an individual who apparently engaged in drug smuggling; the MU-2 was confiscated in the Bahamas. Bahamian officials dismantled great portions of the craft while conducting a thorough search of the plane. Ultimately, Swish obtained the release of the plane, and sent appellant Ingle and Joe Arcuri, an employee of Garrett Corporation, to the Bahamas to recover the plane.

Garrett Corporation is a major national company that performs aircraft maintenance, inspection and repair for MU-2 planes and other aircraft. It is apparent from the evidence that Swish, because of the ordeal the plane had endured, arranged for Arcuri to accompany appellant Ingle and arranged for the plane to be delivered to the Garrett facility in Augusta, Georgia, for repair or inspection, or some degree of work, the extent and nature of which work is at issue in the case.

The circumstances by which appellant Ingle and the Garrett employee, Arcuri, went to Florida to recover the plane were

considered unusual; it was unknown in what condition the plane would be found, or even whether the plane was operable. The plane was discovered to be dusty from storage, with the interior ravaged, major avionics (radio) equipment and other professional instruments missing, and there was other damage. Appellant Ingle and Garrett's employee Arcuri were concerned enough about the air-worthiness of the plane that they did not fill the tanks with gas on leaving the Bahamas, since if the plane malfunctioned after taking off, it could not safely re-land on a full tank of gas.

Appellant Ingle and Arcuri and another member of the recovery crew flew the plane from the Bahamas to Opalaka (Miami), Florida. There the plane was filled with 375 gallons (366 usable gallons) of fuel and flown to Augusta, Georgia, and possession delivered to the Garrett facilities for repairs. Six weeks later, Ingle picked the plane up in Aiken, South Carolina (where it had been flown to be painted). The craft's log indicated sufficient fuel remaining of the 375 gallons to permit several leg flights to demonstrate the plane to a prospective buyer. Ingle flew the plane from Aiken, S. C., to Atlanta, to Milledgeville, back to Atlanta and then returned to Augusta; and he was about five minutes outside Augusta when the engines suddenly "yawed" and quit. He next woke up in the hospital. *Held:*

1. The trial judge erred in directing verdict to Garrett. The appellant pilot, a highly trained and qualified professional, stated that the plane ran out of fuel, although he had carefully calculated his fuel amounts and monitored the fuel gauge. Ingle testified that he told Garrett he wanted a complete or "stem to stern" inspection of the plane. Garrett employees denied this, and stated that Ingle only mentioned three or four specific things he wanted done. The Garrett electrician discovered that two generator wires had been cut, which was an unusual circumstance. It took him eight hours to find these wires, which was in itself an unusual circumstance. At times during these eight hours the plane had to be turned on for a "ground-run" to enable the electrician to find and repair the cut wires. The Garrett employee whose admitted sole function with regard to this plane was to run the plane while the electrician worked on the wiring, recorded his working time (including "breaks") on the plane as 1.6 hours. It is undisputed that no one from Garrett ever informed Ingle the plane had been run on the ground for some amount of time. No one at Garrett performed a calibration of the fuel cell probes which activate fuel gauge measurements and affect fuel gauge accuracy; the calibration test is an annual requirement and is relatively simple to perform and takes about an hour. There was evidence that this particular fuel gauge had been replaced in the plane three years earlier, and had never been calibrated, and

that Garrett had notice of these facts.

Appellant Ingle calculated that from fill-up with 366 usable gallons of fuel in Opalaka, Florida, to his final trip back to Augusta (a total air distance of 915 miles in about 3.8 hours), the plane should have used about 300 gallons of gas. He calculated that he should have landed safely back in Augusta with approximately 66 gallons remaining. He testified that during the flight legs he monitored the fuel gauge and the Hobbs Meter (which measures only fuel used in the air once the wheels are up) and these two components always "tallied." Thus, inferably, the fuel gauge and Hobbs Meter showed no discrepancies, as they should have if the fuel gauge had registered the fuel used up on the ground by Garrett during maintenance.

Garrett contends that directed verdict was proper because fuel could have simply leaked from the plane during flight, and that if the plane did run out of fuel (a proposition for which it contends there is no evidence), there is no basis from which to proximate the fuel loss to the ground-run usage at Garrett facilities. But Ingle testified that the red-warning light which activates when only 20 gallons of fuel remain, never flashed. In view of this evidence and Ingle's testimony that the carefully-monitored fuel gauge and Hobbs Meter (air meter) always "tallied," although the plane had been run on the ground, there remain the questions of whether the plane ran out of fuel, of fuel gauge accuracy, of the degree of inspection required, performed or neglected by Garrett, and of the undisputed failure of Garrett to inform Ingle that the plane had been run on the ground during maintenance.

This evidence, with every reasonable deduction therefrom, creates issues of fact and does not *demand* a verdict for Garrett. Code Ann. § 81A-150 (a). The trial court erred in granting appellee's motion for directed verdict.

2. The trial court did not err in directing a verdict for the plane's owner Swish. By appellant's testimony, as agent and representative of Swish, and after a telephone conversation with Swish when he delivered the plane to Garrett facilities, appellant told Garrett to perform a complete or "stem to stern" inspection. The plane was thus delivered by appellant as agent of the owner to Garrett as an independent contractor for complete repair and maintenance and any negligence resulting in the crash cannot be proximated back to the owner by appellant.

3. The trial court erred in striking Count 3 of appellant's complaint, which dealt essentially with alleged fraud of Garrett in arranging to dispose of or sell the wreckage (and particularly the fuel gauge) before it could be properly examined and investigated. There

is no merit in the appellees' argument and the trial court's conclusion that no cause of action exists for fraud in disposing of evidence after the cause of action for the injury arises. Moreover, Code Ann. § 81A-108 (e) (2) provides: "A party may . . . state as many separate claims . . . as he has regardless of consistency and whether based on legal or on equitable grounds or on both." Potential prejudice inherent in a count of fraud impacting upon a negligence claim may be offset by *motion* with a *hearing* thereon, which motion and notice of hearing must be served not later than five days before the time specified for the hearing. Code Ann. § 81A-106 (d). An affirmative defense against Count 3 means nothing. If defenses in a pleading are to become a dispositive motion, Code Ann. § 81A-106 (d) must be followed. Failure of the appellees to follow a proper procedure in separating or seeking to dismiss the appellant's claim for fraud, and the dismissal of the claim without prior motion and notice for hearing worked exactly the damage the CPA intends to prevent: suddenly on the day of trial, appellant was left with a technical case but no physical evidence or records of F.A.A. investigations and no reason or excuse to explain their absence and no time to prepare another strategy.

4. For purposes of instruction, since this case is reversed in Division 1, 2, and 3, we rule the following enumerations of error to be without merit: Enumerations 3 (b), 4 (a), (b), (f), (g), (j), (l), (m). Enumerations 4 (c), (d), (e), (h), (i), (k) are meritorious. In general, in cases of doubt as to the admissibility of evidence, where the evidence can tend to have any relevancy to the issues at hand and such evidence is not decidedly prejudicial and immaterial, it ought to be admitted, and be left to the jury to judge its significance, weight and credibility as with all other evidence in the case.

5. Based on the foregoing, the judgment is reversed as to the appellee Garrett both as to the directed verdict and the dismissal of Count 3, but affirmed as to the appellee Swish.

*Judgment reversed in part and affirmed in part. McMurray, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 22, 1982.

*James D. Patrick,* for appellant.
*Sewell K. Loggins, E. A. Simpson, Jr.,* for appellees.