**Michael COSGROVE, Luann Cosgrove, Steven B. Jackson, Beverly S. Jackson, Helicopter Flight, Inc., Plaintiffs,**

v.

**McDONNELL DOUGLAS HELICOPTER CO., a Corporation, Defendant.**

Civ. No. 4–92–117.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 10, 1994.

---

Mark N. Stageberg, Lommen, Nelson, Cole & Stageberg, Minneapolis, MN, for plaintiffs.

Lindsay G. Arthur, Jr., Arthur, Chapman, McDonough, Kettering & Smetak, Minneapolis, MN, and George S. McCall, Kern & Wooley, Irving, TX, for defendants.

## ORDER FOR JUDGMENT

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

In accordance with the consent of the parties, this matter was tried before the undersigned United States Magistrate Judge and a Jury, commencing on October 25, 1993. On November 4, 1993, the Jury returned its Special Verdict and, by Order dated November 5, 1993, the Court accepted and adopted the Verdict of the Jury as its Findings in this case.

Thereafter, upon the joint Motion of the parties, and for good cause shown, the entry of Judgment in this matter was stayed for a period of thirty days from the date of our Order of November 19, 1993. A further stay was granted in response to the parties' informal request that, prior to the entry of Judg-ment, the Court resolve an issue which arises as a consequence of the Jury's allocation of 15% fault to Alan Backman ("Backman") for the period of time prior to January 1, 1991. While not a party to these proceedings, at the instance of the Defendant, the Court submitted the issue of Backman's fault, if any, as one of the Interrogatories in the Special Verdict form. See, *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 293 (Minn. 1986), citing *Lines v. Ryan,* 272 N.W.2d 896, 902–03 (Minn.1978); *Computer Tool & Engineering v. Northern States Power Company,* 453 N.W.2d 569, 573–74 (Minn.App.1990), pet. for rev. denied (Minn. May 23, 1990).

The parties have now submitted their Memoranda on that issue and have also briefed the computation of damages to be incorporated in the Judgment entered. Argument and briefing on these issues was concluded at a Hearing on January 5, 1994, at which time the Plaintiffs appeared by Mark N. Stageberg, Esq., and the Defendant appeared by Lindsay G. Arthur, Jr., Esq., and by George McCall, Esq.

For reasons which follow, we conclude that the Jury's apportionment of Backman's fault, for the period prior to January 1, 1991, should not be reallocated to the Plaintiffs Steven B. Jackson and Beverly S. Jackson ("Jacksons"), and we order the entry of Judgment accordingly.

### II. *Factual and Procedural Background*

The Plaintiffs' action arises from a helicopter accident which occurred on February 20, 1991, when fatigue failure caused a portion of the helicopter, which had been manufactured by a predecessor-in-interest of McDonnell Douglas Helicopter Co. ("McDonnell Douglas"), to sever the drive shaft on the aircraft, causing the craft to crash. The mechanism which resulted in the crash was not in dispute—only the fault of the parties in permitting that mechanism to exist. As here pertinent, the facts may be briefly summarized.

At the time of the accident, the helicopter was owned by the Jacksons, had been leased by the Jacksons to Helicopter Flight, Inc. ("Helicopter Flight"), and was being piloted by Michael Cosgrove ("Cosgrove"). Each of the Plaintiffs sued McDonnell Douglas for

the damages they had sustained as a result of the crash. In addition to denying its own fault, McDonnell Douglas pleaded, as an affirmative defense, that each of the Plaintiffs was comparatively at fault. McDonnell Douglas did not assert, however, a counterclaim against any of the Plaintiffs for contribution or indemnity arising from the potential joint and several liability that McDonnell Douglas might ultimately bear for the fault of a Plaintiff.[1]

The Plaintiffs premised their action against McDonnell Douglas upon an asserted defective design of the helicopter, with attendant strict liability in tort, and upon a negligent failure on the part of McDonnell Douglas to warn. In turn, McDonnell Douglas argued that Michael Cosgrove [as the pilot], the Jacksons [as the owners and lessors] and Helicopter Flight [as the lessee] were negligent in their inspection and maintenance of the helicopter. The evidence of record was sufficient to permit the Jury to conclude that proper maintenance and care by any or all of the Plaintiffs would have indicated that a fatigue failure was in progress.

As pertinent to Backman, the evidence revealed that he had been hired by the Jacksons to conduct a pre-purchase inspection of the helicopter in order to ascertain if the craft were airworthy. McDonnell Douglas contends, and the record supports a conclusion, that an approved inspection of the helicopter would have detected the site and status of the fatigue failure. Although Backman contended that such an inspection had occurred, and that the helicopter's operations manual recorded such an inspection as having been completed, the evidence was such that the Jury could have determined that no such inspection had been conducted, that the entry in the operations manual was deficient and inaccurate, and that Backman was, in part, responsible for the Plaintiffs' claimed damages. At the time of the pre-purchase

inspection, Backman was an independent contractor. However, on or about January 1, 1991, Backman was hired by Helicopter Flight as a mechanic and, from that date until the date of the accident, he performed maintenance on the helicopter. Although Backman did not testify in person at the trial, his lengthy discovery deposition was read to the Jury in lieu of his in-Court testimony. Additionally, insofar as the January 1, 1991 date was important to its deliberations, the Jury was instructed as follows:

> After January 1, 1991, Alan Backman became an employee of Helicopter Flight, Inc., and after that date Helicopter Flight, Inc. is responsible for his fault.

Prior to the submission of the case to the Jury, McDonnell Douglas moved the Court for a directed verdict that, prior to January 1, 1991, Backman was the agent of the Jacksons, under the common law of Minnesota. The Court denied that Motion.

As noted, on November 4, 1993, the Jury returned its Special Verdict which allocated the comparative fault as follows:

13. Taking all of the fault that directly caused the Plaintiffs' injuries as 100%, what percentage of fault do you attribute to:

| | | |
|---|---|---|
| a. | McDonnell Douglas Helicopter Co. | 65% |
| b. | Michael Cosgrove | 0% |
| c. | Steven & Beverly Jackson | 10% |
| d. | Alan Backman prior to 1/1/91 | 15% |
| e. | Alan Backman on or after 1/1/91 | 10% |
| | | 100% |

At this juncture, we are only asked to consider the reallocation of Backman's 15% fault for the period prior to January 1, 1991, and the computation of damages for the purposes of entering Judgment.

### III. *Discussion*

#### A. *The Reallocation of Backman's Fault.*

By its present Motion, McDonnell Douglas contends that the 15% of fault, that the Jury

---

1. We do not suggest that any such counterclaim was compulsory, for the claim would not have matured against the Plaintiffs until such time as McDonnell Douglas had become obligated to pay more in damages than its fair share. See, *Bio–Vita, Ltd. v. Rausch,* 759 F.Supp. 33, 38–39 (D.Mass.1991) (dismissing a contribution coun-

terclaim as premature), citing *Stahl v. Ohio River Co.,* 424 F.2d 52 (3d Cir.1970), and *Scherza v. Home Indemnity Co.,* 257 F.Supp. 97 (D.R.I. 1966); but cf., *Index Fund, Inc v. Hagopian,* 91 F.R.D. 599, 605 (S.D.N.Y.1981); *Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78, 89–90 (S.D.N.Y.1973).

had attributed to Alan Backman for the period prior to January 1, 1991, should be reallocated to the Jacksons as: 1) Under 14 C.F.R. § 91.405, the Jacksons had a non-delegable duty to inspect and maintain the helicopter; 2) Under the provisions of Minnesota Statutes Section 360.0216, the Jacksons should be responsible for the fault of Backman; and 3) Under the common law of Minnesota, Backman was the agent of the Jacksons. We address each of these arguments, in turn.

1. *The Non–Delegable Duty to Inspect and Maintain Under 14 C.F.R. § 91.405.*

■ In reliance upon decisional authorities under Minnesota law, McDonnell Douglas argues that 14 C.F.R. § 91.405 imposes upon the owners and operators of aircraft, including helicopters, an obligation to inspect and maintain their aircraft which cannot be delegated to others. We find the argument unconvincing.[2]

■ Ordinarily, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Restatement (Second) of Torts* § 409; *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 403 (Minn.1981), citing *Rausch v. Julius B. Nelson & Sons, Inc.*, 276 Minn. 12, 149 N.W.2d 1 (1967). This general principle has been substantially eroded, however, such that it "would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions." *Pacific Fire Insurance Co. v. Kenny Boiler & Manufacturing Co.*, 201 Minn. 500, 277 N.W. 226, 228 (1937).

Although not expressly cited by McDonnell Douglas, we understand the exception upon which it relies to be that enunciated in *Restatement (Second) of Torts* § 424, which provides:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

Specifically, McDonnell Douglas argues that, as the owners of the helicopter, the provisions of 14 C.F.R. § 91.405 imposed upon the Jacksons a non-delegable duty by requiring as follows:

> Each owner or operator of an aircraft (a) *Shall* have that aircraft inspected * * * and *shall* between required inspections * * * have discrepancies repaired as prescribed in part 43 of this chapter.

[Emphasis added].

Unfortunately for the argument however, the same regulations make clear that the maintenance of an aircraft in an airworthy condition is not so exclusive to the owner or operator as to be non-delegable. In this respect, 14 C.F.R. § 91.403(A) provides:

> The owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition, including compliance with part 39 of this chapter.

Had the regulations intended to hold owners and operators solely responsible, they would not have characterized that responsibility as being less than exclusive. Indeed, the pertinent regulations of the Federal Aviation Administration ("F.A.A.") impose a plethora of requirements, largely expressed in obligatory "shalls," upon owners, operators and mechanics alike, for the inspection and maintenance of aircraft, and for the documentation of such activities.[3] In our view, the non-exclusive nature of these requirements cor-

---

**2.** We also find unconvincing McDonnell Douglas' argument that "Jackson was the principal of Helicopter Flight/Backman pursuant to the provisions of the lease agreement between Jackson and Helicopter Flight." The parties had the opportunity, and exercised that opportunity, to argue all of the permutations of fault to the Jury. The Jury allocated that fault and we are not presented with a compelling reason to believe that the Jury's allocation was incorrect or without evidentiary support. We find no basis to conclude, as a matter of law, that the lease

agreement between the Jacksons and Helicopter Flight created a principal/agency relationship between those parties particularly as it would pertain to the maintenance or inspection of the helicopter.

**3.** We do not deny that McDonnell Douglas makes a plausible argument that the F.A.A.'s regulations place the "laboring oar" for the maintenance of aircraft in the hands of the owners and operators of such craft. Indeed, it was the plausibility of that argument which led the Court to instruct the

roborates our determination that the inspection and maintenance of aircraft is not so singularly a duty of the owner or operator that public policy dictates that it may not be delegated to others.[4] *Nichols v. Metropolitan Bank*, 435 N.W.2d 637, 640 (Minn.App. 1989), pet. for rev. denied (Minn. April 19, 1989).

2. *The Duties Created by Minnesota Statutes Section 360.0216.*

■ In seeking to impose vicarious liability upon the Jacksons for the acts of Backman, McDonnell Douglas relies upon Minnesota Statutes Section 360.0216, which provides as follows:

When an aircraft is operated within the airspace above this state or upon the ground surface or waters of this state by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation.

Under the rubric of a "liberal statutory construction," which would further the legislature's intent to hold the owners of an aircraft responsible for the acts of the authorized pilots of that aircraft, McDonnell Douglas asks that we read the statute as imposing upon the same owners the negligence of the mechanics who have been authorized to maintain the aircraft. To so construe this statute, however, is to cut a remedy from whole cloth. If, as McDonnell Douglas argues, public policy should favor such remedial relief, we are satisfied that the Minnesota Legislature would amend Section 360.0216 accordingly. We decline to do so here.

3. *The Common Law Doctrine of Agency.*

■ As we have noted, prior to the submission of this matter to the Jury, McDon-

nell Douglas requested a directed verdict as to the Jacksons' responsibility for the negligent acts, if any, of Backman. Upon a careful review of Backman's testimony, we denied the Motion as there was an insufficient evidentiary showing that the Jacksons so controlled the conduct of Backman as to destroy their independent contractor status. *Westby v. Itasca County*, 290 N.W.2d 437, 438 (Minn. 1980).[5]

We have again reviewed the trial record and we are satisfied that the evidence does not establish, as a matter of law, that the Jacksons either controlled or had the right to control the means and manner of Backman's performance of the pre-purchase inspection of the helicopter or of its continued maintenance. The very reason that the Jacksons contracted with Backman for those services was his expertise in the performance of such duties. Cf., *Hammes v. Suk*, 190 N.W.2d 478, 481 (Minn.1971) (an independent contractor "contracts to do a piece of work according to his own methods and is subject to his employer's control only as to the end product or final result of his work"). Given the totality of the record before us, we are satisfied that our conclusion—that Backman was not an employee of the Jacksons—was the correct one. *Nichols v. Metropolitan Bank*, supra at 639–40; *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 128 N.W.2d 324, 326 (1964).

Accordingly, we find no basis in law or fact to reallocate the Jury's finding that Backman was 15% at fault, during the period before January 1, 1991, to the Jacksons.

B. *The Computation of Damages.*

■ The parties do not dispute the amount of damages owing to any of the

---

Jury at length as to the generally applicable provisions of the F.A.A.

4. While the authority on this issue is preciously sparse, such authority as there is runs counter to McDonnell Douglas' argument. In *Letnes v. United States*, 820 F.2d 1517 (9th Cir.1987), the Court considered—and rejected—the argument that compliance with the F.A.A.'s regulations, which govern the maintenance of aircraft, transforms an independent contractor status into one of agency under the Federal Tort Claims Act. Although, admittedly, it is not a close fit, we find the analysis in *Letnes* to support the result we

reach here, and to be as close to the mark as the decisions which have otherwise been brought to our attention.

5. In *Westby v. Itasca County*, 290 N.W.2d 437, 438 (Minn.1980), the Court defined the meaning of an "independent contractor" by quoting the *Restatement (Second) of Agency* § 2 as follows:

An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.

Plaintiffs, or the amount of pre- or post-Verdict interest. Rather, McDonnell Douglas contends that the Court should adjust the amount that it is obligated to pay, under the principles of joint and several liability, so as to account for its right of contribution against the Jacksons and Helicopter Flight. According to McDonnell Douglas, it could now move the Court for leave to amend its Answer in order to assert a counterclaim against the Jacksons and Helicopter Flight for contribution and, thereafter, it would avoid its responsibility to pay more than 65% of any of the Plaintiff's damages. In effect, McDonnell Douglas is concerned that it may be prejudiced by paying 100% of the Cosgroves' damages only to find that the Jacksons or Helicopter Flight may not be financially capable of satisfying McDonnell Douglas' right to contribution.

Although we are sympathetic with McDonnell Douglas' interest in streamlining the resolution of the parties' rights to contribution, the solution being proposed was expressly rejected by the Minnesota Court of Appeals in *Steinbrecher v. McLeod Cooperative Power Association*, 392 N.W.2d 709, 716 (Minn. App.1986) as follows:

> We appreciate the trial court's concern for the unfairness of requiring [the defendant] to satisfy the fault of each [plaintiff] in addition to its own fault. That determination has been made by the legislature and if it should be changed, the legislature must do it. In this case, however, the assumption that [the defendant] cannot be indemnified is premature because [the de-

fendant] has not commenced action for contribution and indemnity against the [plaintiffs].

The very same may be said here. To the extent that a portion of any party's equitable share of its obligation is uncollectible, as McDonnell Douglas fears, the Minnesota Legislature has created a statutory remedy which would appear to address that issue. See, *Minnesota Statutes Section 604.02, Subdivision 2*. In any event, the concern that McDonnell Douglas expresses is premature, at best.[6]

NOW, THEREFORE, It is—

ORDERED:

1. That the Motion of the Defendant McDonnell Douglas to reallocate the Jury's finding of 15% fault on Alan Backman's part, for the period before January 1, 1991, is DENIED.

2. That Judgment be entered in favor of the Plaintiffs Michael Cosgrove and Luann Cosgrove in the amount of $458,869.48.

3. That Judgment be entered in favor of the Plaintiffs Steven B. Jackson and Beverly S. Jackson in the amount of $13,163.70.

4. That Judgment be entered in favor of the Defendant Schweitzer Aircraft Corporation.

5. That Judgment be entered in favor of the Plaintiff Helicopter Flight, Inc., in the amount of $14,638.99.

---

6. We are not presented with a Motion by McDonnell Douglas for leave to assert counterclaims for contribution against the Jacksons or Helicopter Flight. As a consequence, we are uncertain of any objections that those parties may assert in opposition to such a Motion, and we are reluctant to enter Judgment on an issue that is not properly before us.

Given the record here, and for the convenience of the parties, we believe it appropriate to briefly summarize our damage calculations. With respect to the Cosgroves, the Jury awarded damages of $444,507.24, to which we have added pre-Verdict interest in the amount of $11,066.86, and post-Verdict interest at $49.93/day for 66 days.

With an add-on for the deductible amount of their property damage insurance coverage,

which the parties have stipulated, the Jury's award to the Jacksons totalled $13,500. Reducing this amount in accordance with the rule announced in *Steinbrecher v. McLeod Cooperative Power Association*, 392 N.W.2d 709 (Minn.App. 1986) produces a damage award of $11,911.76, to which we have added pre-Verdict interest of $1,157.56, and post-Verdict interest of $1.43/day for 66 days.

Lastly, the Jury's award to Helicopter Flight was augmented, as the parties had agreed, by $9,573, which is the amount by which its workers' compensation insurance premium had increased as a result of the helicopter accident. To this amount, we added pre-Verdict interest of $1,287.29, and post-Verdict interest of $1.59/day for 66 days.