JEFFREY JARMUTH, Adm'r of the Estate of Michael Garofalo, Deceased, Plaintiff-Appellant, v. KENNETH W. ALDRIDGE, Indiv., *et al.*, Defendants-Appellees (Covington Aircraft Engines, Inc., *et al.*, Defendants).

First District (6th Division)  No. 1—99—4257

Opinion filed March 30, 2001.

Michael W. Rathsack, of Chicago (Kenneth C. Miller and Michael W. Rathsack, of counsel), for appellant.

Kaplan Begy & Von Ohlen, of Chicago (Larry S. Kaplan and Tamara Dykstra Koury, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Jeffrey Jarmuth, appeals the entry of summary judgment in favor of defendants Kenneth W. Aldridge, doing business as KWA Leasing, who was also sued as Utility Leasing (collectively, the Aldridge defendants), on plaintiff's negligence claim arising out of an airplane crash, which resulted in the death of the pilot, Michael Garofalo (decedent), and his passenger, Vito Garofalo.

Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with the affidavits, if any, demonstrate that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). A reviewing court applies a *de novo* standard of review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

The relevant facts are undisputed. Decedent and Vito Garofalo were killed in an airplane accident on July 28, 1994, in Racine, Wisconsin. The plane was a restored World War II vintage Vultee BT 13-A training aircraft owned by the Aldridge defendants and piloted by decedent.

Several years prior to the accident, decedent and James Skinner, employees of Waukegan Aero, Ltd. (WAL), found the Vultee in pieces in a barn in South Carolina. WAL purchased the salvaged parts and transported them to WAL's facilities where WAL's employees began the restoration process. KWA Leasing, Inc., purchased the Vultee from WAL in 1990. Thereafter WAL sent the Vultee's engine to Covington Aircraft Engines, Inc. (Covington), in pieces for an overhaul. Covington completed the engine overhaul and it was installed. WAL then performed a final restoration inspection and certified the Vultee as airworthy on May 11, 1992. Following an annual inspection, WAL again certified the Vultee as airworthy on June 4, 1993.

In June 1994, Kenneth Aldridge discovered a fuel leak from the Vultee's engine compartment and contacted Howard Siedlecki, a licensed mechanic working for Sunshine Aircraft Repair, to determine the cause of the leak and to repair it. Siedlecki examined the Vultee and discovered the fuel leak was the result of a cracked fitting that goes into the carburetor. Kenneth Aldridge told Siedlecki to repair the leak. Siedlecki removed the carburetor from the Vultee and attempted to effect the necessary repair but encountered difficulties when the carburetor threads came out of the carburetor along with the cracked fitting. Siedlecki, who did not feel competent to repair the carburetor

threads, contacted Covington about the problem and was instructed to send the carburetor to Maynard & Maynard for repair work.

Maynard overhauled the carburetor, performed a water leak test on the carburetor float, certified the carburetor float as airworthy, affixed the appropriate maintenance release tag to the carburetor, and shipped the part back to Sunshine Aircraft Repair. Siedlecki then reinstalled the part, performed the Vultee's annual inspection as required by Federal Aviation Association (FAA) regulations, and certified the aircraft as airworthy on July 25, 1994. Three days later, the plane crashed while decedent was flying it to Oshkosh, Wisconsin, where it was to be sold.

Plaintiff's complaint alleged, *inter alia*, that the Aldridge defendants had a nondelegable duty to ensure the Vultee was airworthy, that the Aldridge defendants breached this duty when they failed to personally inspect the Vultee after it had already been inspected by a FAA-certified mechanic, and that this failure caused the death of decedent because a defect in the carburetor float allowed fuel to enter the mechanism causing the Vultee to crash. The issue is whether the facts and the law, when construed strictly against the Aldridge defendants and liberally in favor of plaintiff, create a duty to ensure the Vultee was airworthy, which could not be delegated to another.

Section 424 of the Restatement (Second) of Torts (1965) provides:

> "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability *** for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."

FAA regulations impose certain duties upon owners of aircraft to ensure the safety of others. Section 121.363 provides:

> "(a) Each *certificate holder* is primarily responsible for—
>
> (1) The airworthiness of its aircraft, including airframes, aircraft engines, propellers, appliances, and parts thereof; and
>
> (2) The performance of maintenance, preventative maintenance, and alteration of its aircraft, including airframes, aircraft engines, propellers, appliances, emergency equipment, and parts thereof, in accordance with its manual and the regulations of this chapter.
>
> (b) A certificate holder may make arrangements with another person for the performance of any maintenance, preventative maintenance, or alterations. *However, this does not relieve the certificate holder of the responsibilities specified in paragraph (a) of this section.*" (Emphasis added.) 14 C.F.R. § 121.363 (1999).

This section clearly states that the duty imposed is nondelegable; the

certificate holder is not absolved of responsibility for noncompliance even though the work to be performed thereunder may have been contracted out. However, section 121.363 applies to "Air Carrier Certificate or Operating Certificate" holders, such as major airlines (14 C.F.R. § 121.1(a) (1999); see also 14 C.F.R. § 119.1 *et seq.* (1999) (Certification: Air Carriers and Commercial Operators)), not to private owners.

In contrast, section 91.403 provides, in pertinent part:

"(a) The owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition, including compliance with part 39 [Airworthiness Directives] of this chapter." 14 C.F.R. § 91.403 (1999).

And section 91.405 provides, in pertinent part:

"Each owner or operator of an aircraft—

(a) Shall have that aircraft inspected as prescribed in subpart E of this part and shall between required inspections *** have discrepancies repaired ***;

(b) Shall ensure that maintenance personnel make appropriate entries in the aircraft maintenance records indicating that the aircraft has been approved for return to service;

(c) Shall have any inoperative instrument or item of equipment *** repaired, replaced, removed, or inspected at the next required inspection; and

(d) When listed discrepancies include inoperative instruments or equipment, shall ensure that a placard has been installed as required by Section 43.11 of this chapter." 14 C.F.R. § 91.405 (1999).

Sections 91.403 and 91.405 apply to *non*commercial aircraft owners. 14 C.F.R. §§ 91.401(a), (b) (1999). The use in section 91.403 of the term "primary" responsibility clearly contemplates "secondary" responsibility, thus negating an implication that the duty to ensure the safety of a privately owned aircraft is nondelegable. Moreover, section 91.403 contains no specific language on par with that in section 121.363 regarding an owner's retention of legal responsibility. The absence of such language indicates the FAA intended no such restriction on the owner's delegation of a section 91.403 duty. Because the Vultee owned by the Aldridge defendants did not fall within the class of aircraft governed by section 121.363 but, rather, into the class of aircraft governed by sections 91.403 and 91.405, the Aldridge defendants were entitled to delegate the duty to ensure the Vultee was airworthy to FAA-qualified mechanics and inspectors. Because the Aldridge defendants' duty under sections 91.403 and 91.405 was delegable, the Aldridge defendants are not liable pursuant to section 424 of the Restatement (Second) of Torts.

Although there are no Illinois cases directly on point, this conclu-

sion is supported by *Cosgrove v. McDonnell Douglas Helicopter Co.*, 847 F. Supp. 719 (D. Minn. 1994), and *White v. Orr Leasing, Inc.*, 210 Ga. App. 599, 436 S.E.2d 693 (1993).

In *Cosgrove*, a helicopter pilot was forced to land when fatigue failure caused the helicopter's drive shaft to be severed. The pilot, Cosgrove, the owners, and the lessee of the helicopter sued McDonnell Douglas, successor in interest to the manufacturer of the helicopter. The jury allocated fault in varying amounts to McDonnell Douglas, the owners, the lessee, and the inspector. In a posttrial motion, McDonnell Douglas requested reapportionment of damages by allocating the inspector's share of fault to the helicopter owners. McDonnell Douglas contended that section 91.403 and 91.405 duties were nondelegable and, as a consequence, the owners were liable pursuant to section 424 of the Restatement (Second) of Torts. The court rejected this argument, finding that the express language of section 91.403 imposes upon an aircraft owner a "non-exclusive" duty. Other portions of the regulations "impose a plethora of requirements, largely expressed in obligatory 'shalls,' " (*Cosgrove*, 847 F. Supp. at 722), upon operators and mechanics as well as others. That the section rests "primary" responsibility for "maintenance of aircraft is not so singularly a duty of the owner or operator that public policy dictates that it may not be delegated to others." *Cosgrove*, 847 F. Supp. at 723.

In *White*, the plaintiffs asserted that section 91.403 "creates a nondelegable duty to passengers and would make [defendant owner] absolutely liable for any negligent inspection." *White*, 210 Ga. App. at 602, 436 S.E.2d at 696. The court, without comment on the regulation, stated, "no authority is cited by plaintiffs for the proposition that allowing a mechanic licensed by the FAA to conduct the inspection makes the owner of the plane liable for any failure of inspection as a matter of negligence per se." *White*, 210 Ga. App. at 602, 436 S.E.2d at 696. Summary judgment for the aircraft owners was affirmed.

Moreover the Illinois case *Van Steemburg v. General Aviation, Inc.*, 243 Ill. App. 3d 299 (1993), *appeal denied*, 151 Ill. 2d 578 (1993), suggests that an aircraft owner discharges his FAA-mandated maintenance duty by having such maintenance performed by licensed professionals. The case further suggests that if an owner has so delegated the duty in compliance with federal regulations, he cannot be held liable unless he knew or should have known of a defect or deficiency left unrepaired.

Here, the undisputed facts indicate that the Aldridge defendants delegated all responsibility for investigation and repair of the fuel leak, the subsequent repair of the carburetor, and the annual inspection of Vultee to professionals licensed to perform such work. The

undisputed facts also indicate that the repairs were documented in accord with FAA regulations. Plaintiff does not dispute the qualifications of Siedlecki, the aircraft mechanic who certified the plane as airworthy following the carburetor work. Neither does plaintiff point to any failure of the Aldridge defendants to act to remedy defects or deficiencies of which they had actual or constructive notice following such certification. Indeed, there is no indication that the Aldridge defendants even saw the aircraft in the three days between completion of the Vultee's final inspection and decedent's take-off for Oshkosh, Wisconsin.

Plaintiff's reliance on *Maloney v. Rath*, 69 Cal. 2d 442, 445 P.2d 513, 71 Cal. Rptr. 897 (1968), in support of its argument is misplaced. *Maloney* is a California case arising out of an automobile accident and addressing a provision of that state's vehicle code. The ruling in that case is irrelevant to the facts of the instant case involving an airplane crash, which addresses different and significantly more stringent federal regulation of aircraft.

Because there is no evidence that the Aldridge defendants were negligent in relying on properly certified FAA mechanics to perform the repair work, and there is no evidence the Aldridge defendants had actual or constructive knowledge of any defect in the Vultee subsequent to the FAA-mandated annual inspection, the Aldridge defendants cannot be held liable for the negligence, if any, of the mechanics. Section 434 of the Restatement (Second) of Torts is an exception to the general rule that an employer is not liable for the negligent acts of an independent contractor except where the employer orders or directs the acts causing the harm or retains control over the operative details of the contractor's work (*Milz v. M.J. Meadows, Inc.*, 234 Ill. App. 3d 281 (1992)), and the exception does not apply under the undisputed facts of this case (see, *e.g.*, *Ingle v. Swish Manufacturing Southeast*, 164 Ga. App. 469, 471, 297 S.E.2d 506, 508 (1982) (directed verdict for aircraft owner proper where aircraft was delivered to independent contractor for maintenance and repair and thus any negligence by independent contractor could not be imputed to owner)).

Accordingly, the order of the circuit court granting summary judgment in favor of defendants Kenneth W. Aldridge, KWA Leasing, and Utility Leasing is affirmed.

Affirmed.

CAMPBELL, P.J., and GALLAGHER, J., concur.