**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM M. ENGLISH,

Plaintiff-Appellant,

v.

SUZUKI MOTOR COMPANY, LTD.,
a Japanese corporation; AMERICAN
SUZUKI MOTOR CORPORATION, a
California corporation,

Defendants-Appellees.

No. 95-4177
(District of Utah)
(D.C. No. 92-CV-195-G)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **HOLLOWAY,** and **MURPHY**, Circuit Judges.

William M. English was seriously injured in an accident while riding an all-terrain vehicle ("ATV") manufactured by Suzuki Motor Co. ("Suzuki"). English brought this action against Suzuki for strict liability and negligence for defective design and manufacture; strict liability for failure-to-warn and for product

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

misrepresentation; breach of warranty; and punitive damages. English appeals following an adverse jury verdict.[1] Specifically, English challenges the following actions of the district court: 1) ruling that English must waive his failure-to-warn claims in order to preclude the admission of evidence of his consumption of alcohol before the accident; 2) granting summary judgment for Suzuki on English's alternative safety design claims; 3) failing to conduct specific jury *voir dire* concerning tort reform; 4) admitting into evidence a Consumer Product Safety Commission ("CPSC") report regarding ATV safety; and 5) dismissing English's misrepresentation claims. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRMS the judgment entered in favor of Suzuki.

## I.  FACTUAL BACKGROUND

On sand dunes near St. Anthony, Idaho, English suffered personal injuries in an ATV accident. English was an experienced ATV rider. While his experience included riding in sand dunes, English had never before ridden in the sand dunes near St. Anthony, Idaho.

At the time of the accident, English was riding a Suzuki LT500R four-wheel ATV ("LT500R"). Earlier that day, English had consumed food and a

---

[1]He has abandoned on appeal his breach of warranty claim and a claim of error with respect to an evidentiary ruling regarding Suzuki's evidence of a comparative risk analysis.

drink containing one ounce of rum.  English rode the LT500R off a sand dune, and the LT500R crashed into the ground beyond the base of the dune.  The impact catapulted English forward over the handlebars onto the ground.

## II. ANALYSIS

### A.  Failure-to-Warn Claims

English claims the district court erred by ruling that in order to preclude the admission of evidence of English's consumption of one alcoholic drink before the accident, he must waive all of his failure-to-warn claims.  English raised the issue in a motion *in limine* originally submitted to the magistrate judge.  The district court ruled from the bench that the magistrate judge's order was "somewhat ambiguous" as to the exclusion of evidence of alcohol use and which warning claims English must waive in exchange.  We review this evidentiary ruling for an abuse of discretion.  *See United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995).

To understand the district court's interpretation of the magistrate's order we must examine the full proceedings before the magistrate judge.  In its argument on the motion *in limine*, Suzuki claimed that English's failure-to-warn claims rendered evidence of English's disregard of alcohol warnings relevant to show English would not have obeyed any warnings had they been given.  The

magistrate judge orally agreed, and English volunteered to dismiss his warnings claims in order to exclude evidence of his alcohol consumption before the accident.

In his subsequent order dated April 17, 1995, however, the magistrate was less clear about whether the agreement would apply to *all* of English's failure-to-warn claims or only to alcohol-use warnings. Although the magistrate discussed the relevance of evidence of English's alcohol consumption, the magistrate also discussed the potential prejudice such evidence may cause. In addition, the magistrate judge noted that, in any event, the issue was moot because English "indicated a willingness to withdraw any claim as to the insufficiency of the warnings." R. at 89. The magistrate finally ordered that the evidence be excluded "unless defendant is able to produce additional evidence to show alcohol impairment of plaintiff at the time of the accident and further upon condition that the plaintiff withdraws his claim of inadequate warnings by defendants of the dangers of driving an ATV and using alcohol." *Id.* at 10.

Interpreting the magistrate's order, the district court ruled from the bench:

> If you don't want alcohol you don't have warnings. . . . I will rule that there is no clearly erroneous aspect of Judge Boyce's order, that he has properly weighed the balance of prejudice against relevance under 403 and I read this as an order based upon all of it plus the discussion here to impose a condition of the elimination of inadequate warnings by defendants in all particulars as a condition to the ruling that no alcohol evidence be presented.

-4-

R. at 613.  English argues that the magistrate judge's order was not ambiguous and therefore the district court was required to find the order clearly erroneous before "modifying" or overturning it.[2]  English further argues that the district court erroneously determined that in order to exclude evidence of his alcohol consumption, English must waive all his failure-to-warn claims.

Although the language quoted from the magistrate's order is clear at first glance, when the order is read as a whole and in conjunction with transcripts of the exchange between the magistrate judge and the parties at oral argument, it becomes less clear whether English was required to waive all of his warnings claims or only the alcohol warnings claims.  Thus, because the district court correctly found the ruling ambiguous and interpreted the order to avoid the necessity of a finding of clear error, the district court did not abuse its discretion.  *Cf. Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995) (stating district court's interpretation of its own ambiguous order is reviewed for abuse of discretion).  Furthermore, we find no abuse of discretion in the district court's determination that evidence of English's disregard of alcohol warnings was relevant to show English would not have followed any of Suzuki's warnings.

---

[2]English argues that in light of the district court's failure to find the magistrate's opinion clearly erroneous before modifying or overturning it, we should not apply an abuse of discretion standard.  English, however, does not cite any authority or make a concrete suggestion for an alternative standard of review.

B. Alternative Safety Design Claims

English claims the district court erred when it granted summary judgment on his strict liability and negligence claims premised on alternative safety design. English also appears to appeal the choice of law applied by the district court. Before the magistrate judge, Suzuki asserted English failed to make any showing that a feasible, alternative design existed. The magistrate judge recommended that the district court grant summary judgment. The district court adopted this recommendation, and this court reviews the district court's application of law *de novo*. *See Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995).

This court must first address the choice of law issue. English appears to claim that the substantive law of California or Idaho, rather than that of Utah, should apply to the alternative design claims of strict liability and negligence. English's theory for application of California law is the placement of the LT500R into the stream of commerce in California. His alternative theory that Idaho law should apply is premised on English's injuries occurring in Idaho.

In a federal court diversity action, the forum state's choice of law standards govern. *See Shearson Lehman Bros., Inc. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993). Utah courts have adopted the "most significant relationship" test. *See Rocky Mtn. Helicopters, Inc. v. Bell Helicopter Textron,*

*Inc.*, 24 F.3d 125, 128 (10th Cir. 1994). The factors a court should consider in determining which state has the most significant relationship are:

> (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.

*Id.*

In light of these four factors, the district court correctly determined that Utah had the most significant relationship with this cause of action. Although the injury occurred in Idaho, this factor alone is not determinative, particularly when the relationship between the parties is centered elsewhere. *See Mountain Fuel Supply Co. v. Reliance Ins. Co.*, 933 F.2d 882, 888 (10th Cir. 1991) (noting Utah has abandoned *lex loci* rule in tort actions). In addition, any negligence causing the injury would have occurred not in Idaho, but in Japan, where the product was designed and manufactured. *See Rocky Mtn.*, 24 F.3d at 128-29 (holding that negligence occurred where product manufactured).[3]

---

[3]English argues that the conduct causing the injury took place in California, where the LT500R was placed in to the stream of commerce and where the marketing, advertising, and investigation decisions were made. Even if English's assertion is correct, one factor alone does not dictate a particular choice of law. Rather, this court must weigh each of the four factors. *See Rocky Mtn. Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128-29 (10th Cir. 1994).

The third and fourth factors weigh heavily in favor of the application of Utah substantive law. English is domiciled in Utah; Suzuki does business in Utah; English purchased the LT500R from a Utah dealership. The district court thus correctly resolved to apply Utah law to English's substantive claims.

The applicable Utah law is articulated in *Allen v. Minnstar, Inc.*, a diversity case. 8 F.3d 1470 (10th Cir. 1993). In *Allen*, the plaintiff brought a strict liability action against a boat and engine manufacturer, claiming the engine was "defectively designed because it was not equipped with a propeller guard to prevent injuries resulting from physical contact with the propeller." *Allen*, 8 F.3d at 1472. Here, English claims that the LT500R was defectively designed because Suzuki failed to equip it with a roll over protection system ("ROPS") which would presumably prevent physical injuries caused by a rollover.

In *Allen*, this court determined that under Utah law the plaintiff bears "the burden of showing that an alternative, safer design, practicable under the circumstances, was available at the time" the product was sold. *Id.* at 1479. Applying *Allen*, the magistrate judge determined that English had not presented any evidence of an alternative feasible design "capable of being adapted in the ATV market." R. at 542. Specifically, the district court determined there was no showing that a ROPS is state-of-the-art or practically feasible equipment for ATV's. *See Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1174 (Colo. 1993)

(recognizing whether state-of-the-art, feasibile alternative design exists as factor in defective design cases). Further, the magistrate determined that English's expert witness only presented speculative and theoretical evidence, not evidence that a ROPS is capable of being adapted for ATV's. The district court properly applied *Allen* in determining that English failed to come forward with alternative design feasibility evidence to support his strict liability ROPS claims.

English then argues that the district court erroneously applied the strict liability standard to his negligence claim. In his report and recommendation which the district court adopted, however, the magistrate judge expressly stated that the applicable standard was reasonable care: the negligence standard. *See Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985); *Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 580 (Utah Ct. App. 1994). The magistrate judge's report states: "There is no evidence that defendants did not use reasonable care in the decision not to install a ROPS system." R. at 542; *see Burnette v. Dow Chem. Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988) (holding that to overcome summary judgment motion, plaintiff must present evidence on which jury could reasonably find for plaintiff). Thus, the district court did not err in adopting the recommendation of the magistrate with respect to English's negligent design claim.

C. *Voir Dire*

English next argues the district court erred in refusing to ask the venire panel specific questions concerning tort reform. This court reviews the *voir dire* process for an abuse of discretion. *See United States v. Gillis*, 942 F.2d 707, 709-10 (10th Cir. 1991) ("Reversal is required if the specific circumstances suggest a significant risk of prejudice and if examination or admonition of jurors fails to negate that inference.").

Before trial, English submitted to the court proposed *voir dire* questions concerning tort reform. The district court did not, however, propound any of the stipulated tort reform questions. English cites Utah case law in support of his position that a plaintiff is entitled to have tort-reform questions posited to the jury. *See Barrett v. Peterson*, 868 P.2d 96, 101 (Utah Ct. App. 1993) ("In light of the pervasive dissemination of tort-reform information, and the corresponding potential for general exposure to such information by potential jurors, a plaintiff is entitled to know *which* potential jurors, if any, have been so exposed.").

The court addressed this specific issue in *Smith v. Vicorp, Inc.*, 107 F.3d 816 (10th Cir. 1997). In *Smith*, the plaintiff also referred this court to the *Barrett* case to support her argument that the district court abused its discretion by failing to propound specific tort reform questions. *See Smith*, 107 F.3d at 817. This court, however, held that federal district courts are governed by Fed. R. Civ. P.

47(a),[4] rather than state *voir dire* requirements. *See id.* at 817-18. The court

held: "Utah law, requiring tort reform voir dire and specifically prescribing the

contours of such, conflicts with the broad discretion vested in federal judges to

control the scope and extent of voir dire." *Id.* at 818. Thus, absent any

independent abuse of discretion in propounding its own venire questions under

Fed. R. Civ. P. 47(a), this court will uphold the manner in which the district court

conducted *voir dire*. In this instance, there is nothing in the district court's

questioning which constituted an abuse of discretion.[5]

---

[4]Fed. R. Civ. P. 47(a) provides:
The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper.

[5]The court asked panel members:
> Is there anybody in the room that would have difficulty following the law in the jury instructions given by the judge and would agree to do that?
> . . . .
> . . . [I]n your mind is there any reason that you know of that would make it hard for you to be fair and impartial if you were selected to be on this jury?
> Is there any reason why if you were one of the parties in this case you would feel that you'd be uncomfortable with a person sitting on the jury who has your present mental state of things?
> Does anybody feel that way, that there's some reason whether expressed or unexpressed, that you ought not to sit on the jury?

R. at 700, 719-20. In addition to those questions, the judge admonished the potential jurors:

-11-

D.  CPSC Report

Next, English argues that the district court committed reversible error by admitting into evidence the findings of a CPSC report regarding ATV safety. English presented a motion *in limine* to exclude the CPSC investigation findings. The magistrate ruled:

> The motion to exclude conclusions from the investigation . . . is GRANTED subject to the following: the CPSC findings, as defined in Rule 803 of the Federal Rules of Evidence are admissible, subject to the trial judge's ruling on relevance of the individual findings.

R. at 549.  On the eve of trial, according to English's Opening Brief, the district court determined that the CPSC findings were relevant and thus admissible. English admits that this ruling was unreported.[6]  He failed, however, to invoke the

---

> You would be under a duty to follow that law and then to apply the facts that you find to the law that is given, even if you don't agree with the law.  Sometimes people don't agree with the law and think, well, that's a ridiculous thing, or I don't agree with it and so they say they wouldn't follow it.  There's ways of changing the law . . . but the jury room is not one of the places to do it.  You can write to your congressman or do something with the legislature, but you can't change the law in a jury room.

R. at 700.  As in *Smith*, "[t]his line of questions was adequate to reveal the seeds of potential tort reform bias and to alert plaintiff's counsel to the possible need to exercise a preemptory challenge." *Smith v. Vicorp, Inc.*, 107 F.3d 816, 818 (10th Cir. 1997).

[6]In his brief, English states:
> In an unreported exchange on the eve of trial, the District Court determined that the CPSC findings and related proceedings were relevant and that Suzuki would be allowed to present evidence

procedure under Fed. R. App. P. 10(c) to provide this court with an acceptable substitute for a transcript of a hearing which was unreported.

Fed. R. App. P. 10(c) provides:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.

English has neither created such a statement, nor submitted one to Suzuki or the district court for approval.

We review the district court's evidentiary rulings for an abuse of discretion. *See Kloepfer v. Honda Motor Co., Ltd.*, 898 F.2d 1452, 1456-58 (10th Cir. 1990) (holding it was not abuse of discretion for district court to exclude evidence of government reports about ATV safety). English relies heavily on *Kloepfer* to argue that this court should find an abuse of discretion because the district court held the CPSC findings admissible. We note, however, that *Kloepfer* is not a *per*

---

regarding such things. Suzuki's counsel then spoke about such things, with the help of visual aids . . . in his opening statement, and Suzuki's primary liability expert, Dr. Roger McCarthy, addressed such things in his testimony . . . .

Aplt. Op. Br. at 8 n. 2. As support for the occurrence of the ruling, English points out that Suzuki has not contested his reference to the ruling.

*se* rule of law that all government reports which do not focus on the specific ATV but on all ATV's generally are impermissibly broad. Rather, *Kloepfer* stands for the proposition that based on the particularities of that case, it was not an abuse of discretion for the district court judge to determine the government reports were too broad to be admitted. This court stated, with respect to evidentiary rulings, the district court is "the first and best judge." *Kloepfer*, 898 F.2d at 1458. Moreover, a court has abused its discretion with respect to an evidentiary ruling only when it makes "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) (quoting *United States v. Cardenas*, 864 F.2d 1528, 1530 (10th Cir. 1989)).

Because there exists no report, transcript, or Rule 10(c) statement of the district court's ruling, we cannot determine whether its decision was an abuse of discretion. In *Sil-Flo, Inc. v. SFHC, Inc.*, the appellants similarly claimed the district court improperly denied their motion *in limine* to exclude expert testimony. 917 F.2d 1507, 1517 (10th Cir. 1990). The appellants admitted that "there was no reporter present at the time and no transcript of [the court's] ruling exists." *Id.* Referencing Fed. R. App. P. 10(c), this court held: "The defendants have not submitted [a statement of the proceedings before the trial court]. Although this procedure is not mandatory, without a record of the proceedings

below we have no option but to defer to the district court's ruling during trial . . . ." *Id. See also United States v. Olivo*, 69 F.3d 1057, 1066 (10th Cir. 1995) (deferring to district court's evidentiary ruling because "[a]ny discussion of a claim in the absence of the appropriate portions of the transcript would be mere speculation").

Because English has failed to even attempt to create a statement under Fed. R. App. P. 10(c) of the proceedings in which the district court ruled the CPSC findings admissible, we must defer to the district court's decision. *See Sil-Flo*, 917 F.2d at 1517; *United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir. 1993) ("In the absence of a transcript or a statement of the parties in lieu of a transcript (Fed. R. App. P. 10(c)), the Court of Appeals will not review an issue, even for plain error.") (citing *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 878 (10th Cir. 1989)).

E.  Misrepresentation Claims

English challenges the adverse summary judgment on his misrepresentation claims, which were premised on Restatement (Second) of Torts § 402B.  English claimed Suzuki made the following affirmative misrepresentations: that the LT500R was safe if the operator did nothing wrong; that the LT500R was safe for use in sand; and that the LT500R did not require a ROPS to protect its operator from harm in rollover accidents.  English claimed that Suzuki made further

-15-

misrepresentations by implying in advertisements and other representations that "particular dangers, including the danger of being severely injured when riding in a sand dune environment, could occur only where there is operator error."

In his report and recommendation, the magistrate judge recommended granting Suzuki's motion on all of the misrepresentation claims except the alleged misrepresentation that the LT500R was safe for use in sand dunes. The magistrate stated: "It appears that plaintiff had an extremely difficult time saying anything was wrong except that Suzuki did not tell him an accident could happen. This is at best a failure to warn claim and not within Section 402B. It is also not a misrepresentation of a material fact." R. at 528. The magistrate found that there was a material issue of fact as to whether the LT500R could be operated safely in sand dunes, and thus recommended denying summary judgment on that claim. The district court upheld the magistrate's partial summary judgment recommendation. At the conclusion of trial, the district court granted judgment as a matter of law in favor of Suzuki on the remaining misrepresentation claim.

We review a grant of judgment as a matter of law *de novo*. *See Sheets v. Salt Lake County,* 45 F.3d 1383, 1387 (10th Cir. 1995). Judgment as a matter of law is proper if the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue as to any material fact, and the moving party should prevail as a matter of law. *See Frandsen v. Westinghouse Corp.*, 46

F.3d 975, 977 (10th Cir. 1995); *Pendleton v. Conoco Inc.*, 23 F.3d 281, 286 (10th Cir. 1994) (stating "standard for . . . judgment as a matter of law . . . is identical to the standard for summary judgment . . . .").

English's misrepresentation claims were based on Restatement (Second) of Torts § 402B which states:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justified reliance upon the misrepresentation, even though
> (a) it is not made fraudulently or negligently; and
> (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

In support of his claims of misrepresentation, English presented his own testimony and that of an expert witness. English himself testified that he had operated the LT500R for more than two years in sand and had been satisfied with its performance. English's own expert witness testified that the LT500R could be operated "successfully" in sand. There was no contradictory evidence and thus no evidence upon which a reasonable jury could have found that the LT500R could not be safely operated in sand.

With respect to English's other affirmative misrepresentation claims, English admitted in deposition testimony that Suzuki did not affirmatively tell him that the LT500R was safe if he did nothing wrong or that a ROPS was not

-17-

necessary.[7] Furthermore, as the magistrate judge concluded, depicting or billing an item as fun and enjoyable, rather than explaining or showing possible accidents or injuries, does not constitute a misrepresentation of the character or quality of the product. *See* Restatement (Second) of Torts § 402B cmt. g; *Adkins v. Ford Motor Co.*, 446 F.2d 1105, 1108 (6th Cir. 1971) (stating misrepresentation requires reliance on "a particular and specific statement concerning quality or fitness as the foundation for an action of misrepresentation under Section 402B").

Additionally, these claims appear to be claims of misrepresentation by omission, rather than affirmative misrepresentation claims. All of English's misrepresentation by omission claims smack of an attempt to reinstate the failure-to-warn claims which, as discussed above, were waived. English argues that "Suzuki . . . failed to disclose the fact that a rider such as Mr. English could end up as he did even if he was doing nothing wrong." Aplt. Op. Br. at 46. This claim is essentially a failure-to-warn claim, not a misrepresentation claim for purposes of Restatement (Second) § 402B. Section 402B addresses only an affirmative representation of material fact regarding the character or quality of the product and requires the plaintiff's reliance on the representations. *See*

---

[7]English stated: "I don't feel that the information was false." R. at 528. With respect to videos which depicted people enjoying their rides on the LT500R, rather than crashing and injuring themselves, English stated: "[A]gain, I would say I didn't see anything that was false that I could think of . . . . [they] show you the fun side of riding an ATV." *Id.*

-18-

Restatement (Second) Torts § 402B cmts*.; Rehler v. Beech Aircraft Corp.*, 777 F.2d 1072, 1077 n. 8 (5th Cir. 1985) (noting that under Texas law, § 402B covers only affirmative or express misrepresentations).  The district court thus did not err in determining Suzuki was entitled to judgment as a matter of law with respect to English's misrepresentation claims.

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.

ENTERED FOR THE COURT,


Michael R. Murphy
Circuit Judge