ROCKY MOUNTAIN HELICOPTERS,
INC., Plaintiff–Appellant,

v.

BELL HELICOPTER TEXTRON,
INC., Defendant–Appellee.

No. 93–4062.

United States Court of Appeals,
Tenth Circuit.

May 12, 1994.

Robert S. Young, Salt Lake City, UT, for plaintiff-appellant.

Shawn E. Draney of Snow, Christensen & Martineau, Salt Lake City, UT, for defendant-appellee.

Before LOGAN, McKAY and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff Rocky Mountain Helicopters, Inc. ("Rocky Mountain") appeals from the district court's Rule 12(b)(6) dismissal of its complaint. *See* Fed.R.Civ.P. 12(b)(6) (dismissal for failure to state a claim upon which relief can be granted). We have jurisdiction pursuant to 28 U.S.C. § 1291.

In May 1989, Rocky Mountain purchased a used Bell Model 214–B helicopter from Heavylift Helicopters, Ltd. in New Zealand. Bell Helicopter Textron, Inc. ("Bell") had manufactured the helicopter in Texas in 1981, and had originally sold the helicopter to a Japanese corporation. In its original sales agreement with the Japanese corporation, Bell disclaimed all express and implied warranties except an express warranty to repair or replace defective parts within the first year or 1,000 hours of operation.

According to Rocky Mountain's complaint, the helicopter had logged 2,362.3 hours of flight time when Rocky Mountain purchased it. While using the helicopter for routine logging operations in Alaska in September 1989, Rocky Mountain pilots and mechanics discovered water trapped inside the rotor blades, which were original equipment. At the time of this discovery, the helicopter including its rotor blades had logged 2,950.9 operating hours.

Upon discovering the trapped water, Rocky Mountain removed the rotor blades and shipped them to Bell for evaluation. Bell repaired one of the rotor blades and replaced the other one, with a total cost to Rocky Mountain of approximately $130,-000.00. When Bell refused to cover the costs of the rotor blade repair and replacement, Rocky Mountain filed this diversity action in federal court seeking to recover damages for negligence, breach of warranty, and fraudulent and negligent misrepresentation.

The district court dismissed Rocky Mountain's cause of action pursuant to Fed. R.Civ.P. 12(b)(6) with little or no explanation. Rocky Mountain appealed to this court, and we remanded for the district court to specify its choice of law and to explain its dismissal, 972 F.2d 357. On remand, the district court, applying Texas law, specified the following

reasons for its previous dismissal: (1) Rocky Mountain sustained only economic injury, and a negligence action cannot be maintained for purely economic injury—*i.e.*, failure of or injury to a product resulting in repairs to or replacement of the product itself, but not involving personal injury or damage to other property; (2) an express warranty was not created through Bell's representations to the Federal Aviation Administration ("FAA"); and (3) Rocky Mountain's claim of fraudulent misrepresentation failed because it did not include an allegation that Bell intended its representations to the FAA to be acted upon by Rocky Mountain, and its claim of negligent misrepresentation failed because Rocky Mountain could not prove that it justifiably relied on Bell's representations to the FAA.

■ On appeal, Rocky Mountain alleges the district court erred in: (1) applying Texas law; (2) concluding the law of Texas does not recognize a negligence claim for recovery of purely economic loss; (3) concluding the law of Texas does not recognize Rocky Mountain's breach of express warranty claim; and (4) concluding the law of Texas does not recognize Rocky Mountain's fraudulent and negligent misrepresentation claims. We review choice of law determinations de novo. *Shearson Lehman Bros., Inc. v. M & L Investments,* 10 F.3d 1510, 1514 (10th Cir. 1993). We also review Rule 12(b)(6) dismissals de novo. *National Commodity and Barter Ass'n, National Commodity Exchange v. Gibbs,* 886 F.2d 1240, 1243–44 (10th Cir. 1989). A Rule 12(b)(6) dismissal is appropriate if, taking all well-pleaded facts as true and construing them in the light most favorable to the plaintiff, it is clear that the plaintiff can prove no set of facts which would entitle him to relief. *Id.*

## I.

■ In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477

(1941); *Shearson Lehman Bros., Inc. v. M & L Investments,* 10 F.3d 1510, 1514 (10th Cir. 1993). In this case, Utah's choice of law provisions apply.

■ Utah courts apply the "most significant relationship" analysis to determine the choice of law in a tort cause of action. *Forsman v. Forsman,* 779 P.2d 218, 219–20 (Utah 1989); *see also Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 888 (10th Cir.1991). In applying the most significant relationship test, a court should consider the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Forsman,* 779 P.2d at 219 (citing the Restatement (Second) of Conflict of Laws § 145). In cases involving injury to tangible property, the law of the state where the injury occurred usually governs the cause of action, unless "some other state has a more significant relationship . . . to the occurrence, the thing and the parties." Restatement (Second) of Conflict of Laws § 147. Although the injury to the helicopter occurred in Alaska in this case, the parties agree that the relationships of both Utah and Texas (to the occurrence, the helicopter and the parties) are more significant than that of Alaska. Thus, we must determine whether Utah or Texas has the more significant relationship.

■ We agree with the district court that Texas has the more significant relationship. Applying the factors set out in the Restatement, as applied by the Utah Supreme Court in *Forsman:* (1) the negligence, if any, occurred in Texas during manufacture; and (2) although there was no relationship between the parties in this case because Rocky Mountain purchased the helicopter used, Rocky Mountain and Bell's past dealings are centered in Texas, rather than Utah because Rocky Mountain orders Bell helicopters from Texas and sends them there for repair.[1]

---

1. The remaining factor—*i.e.*, the principle place of business of the parties—is not helpful to the "most significant relationship" inquiry because

one party has its principle place of business in Utah and the other in Texas, making this factor a wash.

Thus, we conclude Texas law governs the resolution of Rocky Mountain's tort claims.

We must now determine what law governs Rocky Mountain's contract claim that Bell breached an express warranty. We once again look to Utah's choice of law provisions to determine which law to apply. *See Klaxon*, 313 U.S. at 496, 61 S.Ct. at 1021.

■ We have previously determined that Utah would also apply the "most significant relationship" analysis to determine the choice of law in a contract cause of action. *See Mountain Fuel Supply*, 933 F.2d at 888 (while not formally embraced by Utah courts, most significant relationship analysis would be adopted by Utah). The factors taken into account when applying this test are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188. Because Rocky Mountain and Bell are not in privity of contract in this dispute, this test is difficult to apply. However, because the place of the original contract with the Japanese corporation was Texas and because the subject matter of that contract—*i.e.*, the helicopter—was built in Texas, we agree with the district court that Texas law also applies to Rocky Mountain's contract claim.

## II.

Rocky Mountain next disputes the district court's conclusion that the law of Texas does not recognize a negligence claim for recovery of purely economic loss. Rocky Mountain argues that the Texas Supreme Court provided for such a negligence claim in *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977). Bell asserts that two later Texas Supreme Court cases explicitly denied that a negligence claim for purely economic loss existed under Texas law. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986); *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Tex.1978).

■ Both arguments have merit, which is apparent from the split among federal courts interpreting this aspect of Texas law. While the Fifth Circuit has held that Texas law does not recognize a negligence claim for purely economic loss, *see Arkwright–Boston Manufacturers Mutual Insurance Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174, 1178 (5th Cir.1988), the Eleventh Circuit has held that Texas law recognizes a negligence claim for purely economic loss, *see Stewart & Stevenson Services, Inc. v. Pickard*, 749 F.2d 635, 640–41 (11th Cir.1984); *see also Held v. Mitsubishi Aircraft International, Inc.*, 672 F.Supp. 369, 377 (D.Minn.1987). Because we agree with the Fifth Circuit's interpretation of Texas law, we affirm the district court's Rule 12(b)(6) dismissal.

In 1977, in *Nobility Homes*, the Texas Supreme Court stated in dicta, "[w]e hold that Shivers may not recover his economic loss under [a strict liability tort theory] but may recover such loss under the implied warranties of the Uniform Commercial Code *and the theory of common law negligence.*" 557 S.W.2d at 78 (emphasis added). The language regarding the common law negligence recovery was clearly dicta because Nobility had not challenged the negligence cause of action in its appeal to the Texas Supreme Court. *Id.* at 83. One year after deciding *Nobility Homes*, in holding that purely economic loss was not recoverable under a theory of strict liability, the Texas Supreme Court stated, "[i]n transactions between a commercial seller and a commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code." *Mid Continent Aircraft*, 572 S.W.2d at 313. Thus, although the issue of economic loss recovery under a negligence theory was not before the court, the court appeared to limit economic loss recovery to Uniform Commercial Code ("UCC") remedies. With regard to this conclusion, the Texas Supreme Court reasoned:

> [D]amage to the product itself is essentially a loss to the purchaser of the benefit of the bargain with the seller. Loss of use and cost of repair of the product are the only expenses suffered by the purchaser.

The loss is limited to what was involved in the transaction with the seller, which perhaps accounts for the Legislature providing that parties may rely on sales and contract law for compensation of economic loss to the product itself.

*Id.* Eight years later, in *Jim Walter Homes,* the Texas Supreme Court, in determining whether a cause of action based purely on economic loss could be characterized as a tort and thus subject to punitive damages, held, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." 711 S.W.2d at 618. These later decisions of *Mid Continent Aircraft* and *Jim Walter Homes* cast doubt upon the court's statements in *Nobility Homes,* and in our opinion, reflect a change of course in Texas' highest court with regard to economic loss recoverability in negligence actions.[2]

Rocky Mountain argues that *Nobility Homes* can be harmonized with the two later cases, asserting that the distinction between the cases is that the plaintiffs in *Mid Continent Aircraft* and *Jim Walter Homes* were in privity of contract whereas the *Nobility Homes* plaintiffs were not. Thus, Rocky Mountain contends that where contract claims are available to a plaintiff, a recovery for purely economic loss is available only in contract; however, where contract claims are unavailable to a plaintiff due to a lack of privity, the plaintiff can recover in negligence for purely economic loss. In support of this assertion, Rocky Mountain cites *Butchkosky v. Enstrom Helicopter Corp.,* 784 F.Supp. 882 (S.D.Fla.1992), in which a federal district court, applying Florida law, adopted this privity/non-privity distinction with regard to economic loss recovery. We think Texas' highest court would reject *Butchkosky*'s privity distinction in light of its

statements in *Mid Continent* and *Jim Walter Homes,* where the Texas Supreme Court appears to be drawing a bright-line distinction between contract actions and tort actions with regard to economic loss.

Rocky Mountain is incorrect when it states that a remote purchaser, who is not in privity of contract and who suffers purely economic loss, has no recourse without an action in negligence. Rocky Mountain elected to purchase a used helicopter without any warranties given by its seller—Heavylift Helicopters, Ltd. in New Zealand. *See Bocre Leasing Corp. v. General Motors Corp.,* 840 F.Supp. 231, 234 (E.D.N.Y.1994). Rocky Mountain, could have bargained for warranties and in the event of a breach, could have sued Heavylift under the contract. *See id.* (rejecting the *Butchkosky* privity distinction on this basis). Rocky Mountain cannot fall back on tort when it has failed to preserve its UCC remedies. Thus, we find no merit in Rocky Mountain's assertion that Texas' economic loss limitation in negligence actions should not be applied to those who lack privity of contract.

### III.

We now address whether Texas courts would recognize Rocky Mountain's breach of express warranty claim.[3] Rocky Mountain asserts that Bell's representations to the FAA, which were necessary to acquire a type certificate for the now-injured helicopter, created an express contractual warranty for all future buyers who purchased the helicopter during its FAA-projected flight life of 7200 hours. We disagree.

As a remote buyer of the helicopter, Rocky Mountain is not in privity of contract with Bell. Texas' Commercial Code leaves the matter of whether privity is required to take

---

2. Further evidence that Texas would likely reject a cause of action in negligence for purely economic loss can be found in the United States Supreme Court's decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). While not controlling in this case because it is interpreting admiralty law, *East River* reflects the trend in the majority of jurisdictions to reject such a cause of action. *See id.* at 868, 871–74, 106 S.Ct. at 2301, 2302–04.

3. While Rocky Mountain also alleged breach of implied warranties in its complaint, an allegation which the district court fully addressed, Rocky Mountain does not assert error on appeal with respect to the district court's conclusion that no breach of implied warranties occurred. Thus, the issue is not before us.

advantage of express warranties to the Texas courts to decide. Tex.Bus. & Com.Code Ann. § 2.318. Texas case law is unclear as to whether privity of contract is required in an action based upon breach of express warranty for recovery of economic loss. *Compare Texas Processed Plastics, Inc. v. Gray Enter., Inc.,* 592 S.W.2d 412, 415 (Tex.Civ. App.—Tyler 1979) (holding privity of contract is required), *with Indust–Ri–Chem Laboratory, Inc. v. Par–Pak Co., Inc.,* 602 S.W.2d 282, 287 (Tex.Civ.App.—Dallas 1980) (holding privity is not required). However, we hold that even if privity were not required, Rocky Mountain could not recover for breach of express warranty.

Under Texas law, one way that a seller can expressly warrant its product is through a "description of the goods which [wa]s made part of the basis of the bargain [and] create[d] an express warranty that the goods [would] conform to the description." *See* Tex.Bus. & Com.Code Ann. § 2.313(a)(2). Although a remote buyer will not have contracted with the original seller, courts will often find that the original seller expressly warranted a product to a remote buyer through its advertising, through labels attached to the product, or through brochures and literature about the product. *See* James J. White & Robert S. Summers, Uniform Commercial Code § 11–7, at 411 (2d ed. 1980) (hereinafter "White & Summers"). Rocky Mountain asserts that Bell's representation to the FAA that the helicopter blades were designed to prevent water from becoming trapped inside, as well as Bell's representation to the FAA that the helicopter was constructed in such a way that the probability of catastrophic fatigue failure was extremely remote during the first 7200 hours of operation, were descriptions that expressly warranted the helicopter blades for 7200 hours of flight. Therefore, we must address whether Bell's alleged 7200–hour representation to the FAA is comparable to express warranties made through advertising or labels, thus making Bell's representation to the FAA an express warranty.

 Before submitting the question of whether an express warranty exists to the jury, the trial court must first determine whether certain evidence of affirmations or promises may qualify as an express warranty under § 2.313. *See Elanco Products Co. v. Akin–Tunnell,* 474 S.W.2d 789 (Tex.Civ. App.—Amarillo 1971) (citing Anderson, Uniform Commercial Code, Vol. 1, § 2.313:7 (2d ed. 1970)). In order to qualify as an express warranty under § 2.313 when there is no privity of contract, the non-privity plaintiff must be a party whom the defendant could expect to act upon the representation. White & Summers, § 11–8, at 411. The rationale for allowing a remote buyer to recover pursuant to an express warranty is that because of modern merchandising techniques, the consumer should be allowed to sue the original seller directly when the seller's representations, which were expressed and disseminated in the mass communications media and which were on labels attached to the goods themselves, prove false. *See Klages v. General Ordnance Equipment Corp.,* 240 Pa.Super. 356, 367 A.2d 304, 308 (1976). The theory is the consumer needs protection against the original seller whose published representations caused the consumer to make the purchase. *Id.; see also Randy Knitwear, Inc. v. American Cyanamid Co.,* 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, 402 (1962).

 Unlike advertising and labels, Bell's alleged representations to the FAA were not disseminated in the media and were not made to induce sale. Furthermore, in making its representations to the FAA, Bell expected only action from the FAA in the form of design approval and type certificate issuance; Bell could not have expected Rocky Mountain, or any purchaser, to act upon the representation. Thus, the trial court correctly determined that Bell's representations to the FAA could not qualify as an express warranty to Rocky Mountain under § 2.313.

## IV.

Rocky Mountain bases its fraudulent and negligent misrepresentation claims on the same representations, made by Bell to the FAA, as it based its breach of express warranty claim.

## A.

▆▆▆ Under Texas law, the elements of fraudulent misrepresentation are:

(1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) *the speaker made the representation with the intent that it should be acted upon by the party;* (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury.

*Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1991) (emphasis added). In its complaint, Rocky Mountain failed to allege the fourth element—*i.e.,* that Bell made its representations to the FAA with the intent that a remote purchaser would act upon them. Thus, the district court properly dismissed the fraudulent misrepresentation cause of action for failure to state a claim. *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983) (complaint is subject to dismissal for failure to state a claim when plaintiff fails to allege an essential element of the claim).[4]

## B.

▆▆▆ The elements of negligent misrepresentation as set out in subsection one of the Restatement (Second) of Torts § 552 and as adopted by the Supreme Court of Texas are as follows:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss *by justifiably relying on the representation.*

*Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (emphasis added) (adopting Restatement (Second) of Torts § 552). Section 552 states:

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The commentary to the Restatement, in discussing justifiable reliance and the limited group which is entitled to rely on a representation, states, "one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the *maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.*" It cannot be said that Bell supplied the information to the FAA intending that a remote buyer base its purchase of a used helicopter upon it. As stated above, Bell's purpose in providing the information to the FAA was to obtain a type certificate.

▆▆▆ Rocky Mountain further asserts that it falls within subsection three of the Restatement because Bell had a public duty to make representations to the FAA. The commentary to subsection three states:

The scope of the defendant's duty to others in these cases will depend upon the

---

4. Rocky Mountain's reliance on *Learjet Corp. v. Spenlinhauer,* 901 F.2d 198 (1st Cir.1990), is misplaced. In *Learjet,* the First Circuit, applying the law of Kansas, held that representations made to the FAA for the purpose of obtaining a type certificate, could be the basis of a cause of action in fraudulent misrepresentation. It is clear from the *Learjet* opinion, however, that Kansas law does not have the intent requirement which is an element of a fraudulent misrepresentation claim under Texas law. *See id.* at 202.

*purpose for which the information is required to be furnished.* The purpose may be found to be to protect only a particular and limited class of persons ... In such a case the liability of the company when it negligently gives false information extends only to those [who are members of that limited class].

The purpose of FAA type certification is to ensure safety. *See* 49 U.S.C.App. § 1423(a). Ensuring safety means taking precautions that the helicopter will not break down in flight; it does not mean that it will not break down at all. *See Arney v. United States,* 479 F.2d 653, 658 (9th Cir.1973) (purpose of type certification was to reduce accidents). In fact, FAA regulations clearly contemplate rotor blade failure prior to completion of the 7200–hour time frame, as the regulations require that the rotors be inspected every 100 hours of use. 49 C.F.R. § 43.15(b). Thus, the purpose of the FAA certification procedure is not to protect future buyers from any helicopter breakdown during the 7200–hour period but is instead only to ensure the safety of those who would be placed in danger. *See In re Air Crash Disaster Near Silver Plume,* 445 F.Supp. 384, 409 (D.Kan.1977) (certification of aircraft is to insure detection and enforce remedying of defects in the aircraft inimical with its condition for safe operation, not to calculate or insure the value of inspected planes). Consequently, the FAA has effectively eliminated the owner from the limited class of persons the type certificate information is designed to protect, unless of course the owner is a passenger on the helicopter or one who could otherwise be injured in a helicopter accident. Because the owner is suing in its status as purchaser rather than as a potential accident victim (which it is unlikely a corporation could be), we hold that Rocky Mountain cannot sue Bell for negligent misrepresentation.

AFFIRMED.