Robert A. SCHROEDER, Dr. William A. Schmidt, Respondent,

v.

Dan WHITE, et al., Appellant.

No. C8–00–1353.

Court of Appeals of Minnesota.

April 17, 2001.

William A. Schmidt, Minneapolis, (respondent pro se).

Daniel W. Stauner, Crystal, (for appellant).

Considered and decided by PETERSON, Presiding Judge, SHUMAKER, Judge, and FOLEY, Judge.*

**OPINION**

PETERSON, Judge

After purchasing an aircraft from respondent Dr. William A. Schmidt, re-

Minn. Const. art. VI, § 10.

spondent Robert A. Schroeder brought an action seeking to rescind the purchase, alleging that Schmidt failed to advise him that the aircraft was defective and not airworthy. Schmidt then filed a complaint against three third-party defendants, including appellant Dan White, an aircraft mechanic who had certified to the Federal Aviation Administration (FAA) that the aircraft was in compliance with FAA regulations. The district court concluded that White was liable to Schmidt for misrepresenting the aircraft's compliance with FAA regulations, and judgment was entered in favor of Schmidt for damages resulting from the misrepresentation. White appeals from the judgment. We reverse.

## FACTS

This action arose out of Schroeder's purchase of a 1946 Piper PA–12 Super Cruiser aircraft from Schmidt. In 1992, John Reed, who owned the aircraft at the time, hired White, an aircraft mechanic licensed by the FAA, to repair and partially restore the aircraft. Upon completing the repairs and restoration, White certified the aircraft as airworthy. On April 20, 1993, May 7, 1994, and April 6, 1995, White performed 100 hour maintenance checks on the aircraft, which are inspections required by the FAA after every 100–hours of flying time, and certified the aircraft as airworthy.

In May 1995, Schmidt purchased the aircraft from Reed. Before purchasing the aircraft, Schmidt inspected it and its logbook, reviewing the certifications entered in the logbook by White and two FAA inspectors. It is standard practice for an aircraft buyer to review the logbook to determine the aircraft's condition.

Schmidt in turn sold the aircraft to Gordon Hammons. Shortly after purchasing the aircraft, Hammons discovered that its tail was not in compliance with FAA regulations. In 1996, the FAA grounded the aircraft as not airworthy due to the improper tail and also due to a warped right wing flap. As a result of the FAA investigation of the aircraft's airworthiness, White's aircraft mechanic license was temporarily suspended as a disciplinary measure for his certification of the aircraft despite the fact that its tail had not been approved by the FAA.

Hammons sued Schmidt seeking to rescind his purchase of the aircraft. Schroeder purchased the aircraft pursuant to a settlement agreement between Hammons and Schmidt. Schroeder then commenced this action against Schmidt, seeking to rescind his purchase of the aircraft based on Schmidt's alleged failure to advise him of the existence of defects in the aircraft and on the fact that the aircraft had been grounded by the FAA. Schmidt in turn filed a complaint against White and two FAA inspectors, alleging that they had misrepresented that the aircraft complied with FAA regulations. Schroeder and Schmidt entered into a settlement, and the two inspectors settled with Schmidt and were dismissed from this action.

The only claim remaining, Schmidt's claim against White, was tried to the court. The district court concluded that White was liable to Schmidt for negligently misrepresenting the aircraft's compliance with FAA regulations.

## ISSUES

Did the district court err in concluding that White was liable to Schmidt for negligently misrepresenting the aircraft's airworthiness?

## ANALYSIS

■ On appeal from a judgment, the only questions for review are whether the evidence sustains the findings of fact and whether those findings sustain the conclusions of law and judgment. *Novack v. Northwest Airlines, Inc.,* 525 N.W.2d 592, 596 (Minn.App.1995).

The Minnesota supreme court has adopted the following definition of negligent misrepresentation:

(1) One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered

(a) By the person or one of the persons for whose benefit and guidance he intends to supply the information, or knows that the recipient intends to supply it; and

(b) Through reliance upon it in a transaction which he intends the information to influence, or knows that the recipient so intends, or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Bonhiver v. Graff,* 311 Minn. 111, 122, 248 N.W.2d 291, 298–99 (1976) (quoting Restatement (Second) of Torts § 552); *see also Smith v. Woodwind Homes, Inc.,* 605 N.W.2d 418, 424 (Minn.App.2000) ("An essential element of negligent misrepresentation is that the alleged misrepresenter owes a duty of care to the person to whom they are providing information.").

In *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.,* 24 F.3d 125 (10th Cir.1994), after purchasing a helicopter from the defendant, the plaintiff discovered a defect in the helicopter's rotor blades and sued to recover pecuniary-loss damages. The plaintiff alleged that the defendant had negligently misrepresented the condition of the blades to the FAA in order to obtain a type certification. *Id.* at 130–31. The tenth circuit court of appeals held that a cause of action for negligent misrepresentation by an aircraft buyer seeking to recover pecuniary-loss damages could not be based on information provided under the FAA certification procedure. *Id.* at 133.

The court explained:

The commentary to the Restatement, in discussing justifiable reliance and the limited group which is entitled to rely on a representation, states, "one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the *maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.*" It cannot be said that [defendant] supplied the information to the FAA intending that a remote buyer base its purchase of a used helicopter upon it.
* * *

[Plaintiff] further asserts that it falls within subsection three of the Restatement because [defendant] had a public duty to make representations to the FAA. The commentary to subsection three states:

The scope of the defendant's duty to others in these cases will depend upon the *purpose for which the information is required to be furnished.* The purpose may be found to protect only a particular and limited class of persons * * * In such a case the liability of the company when it negligently gives false information extends only to those [who are members of that limited class].

24 F.3d at 132–33 (quoting Restatement (Second) of Torts § 552, commentary) (emphasis in original). The *Rocky Mountain* court concluded that the purpose of the FAA certification procedure is to ensure air-travel safety and protect against personal injury, not to protect owners or future buyers from pecuniary loss. *Id.* at 133.

*Rocky Mountain* is consistent with Minnesota caselaw holding that a statutory duty does not give rise to common law tort liability unless the injured party falls within the class of·persons the statute is designed to protect or an underlying common law cause of action pre-existed enactment of the statute. *See, e.g., Lorshbough v. Township of Buzzle,* 258 N.W.2d 96, 102 (Minn.1977) (common law exception); *Baker v. Surman,* 361 N.W.2d 108, 111 (Minn. App.1985) (because the primary and predominant objective of the FHA appraisal system is the protection of the government and its insurance funds, a home buyer cannot recover damages for negligent appraisal from the federal government or an appraiser employed by the government even though a potential home buyer is a foreseeable recipient of an FHA appraisal); *see also Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank of St. Paul,* 625 F.Supp. 713, 717 (D.Minn.1986) (mere fact that one may benefit from a statute does not mean that one is a member of the special class for whose benefit the statute was enacted).

■ Schmidt makes no claim that a common law cause of action pre-existed the FAA certification procedure, and he cites no authority showing that the FAA inspections and certifications performed by White were intended to protect potential aircraft buyers from pecuniary loss. Instead, he argues that this court should follow *Cosgrove v. McDonnell Douglas Helicopter Co.,* 847 F.Supp. 719 (D.Minn. 1994). *Cosgrove,* however, was a products liability action to recover damages resulting from a helicopter crash, an occurrence that FAA regulations are intended to protect against. We, therefore, decline to follow *Cosgrove.* We hold that a negligent misrepresentation claim to recover pecuniary-loss damages cannot be based on an erroneous certification of airworthiness made to the FAA.

In his brief, Schmidt asserts that he requested that the aircraft be inspected by White before he bought it, suggesting that White could be liable to Schmidt under contract law. Schmidt's assertion, however, is directly contrary to the evidence presented at trial. At trial, Schmidt testified that he never heard of White and never had any contact with him before purchasing the aircraft.

In light of our conclusion that the evidence was insufficient to establish liability, we do not reach the issue of whether the district court erred in determining damages.

### DECISION

The district court erred in concluding that White was liable to Schmidt for negligent misrepresentation. There is no evidence of any contractual relationship between White and Schmidt. We, therefore, reverse the judgment in favor of Schmidt.

**Reversed.**