F I L E D
**United States Court of Appeals
Tenth Circuit**

**MAY 1 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT CHARLES DAVIS,

      Plaintiff - Counter-
      Defendant - Appellee,

v.

DEBORAH R. NORRIS,

      Defendant - Counter-
      Claimant - Appellant.

No. 99-4149
(D.C. No. 96-CV-359K)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **HENRY** , **ANDERSON** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Deborah Norris appeals from the district court's dismissal with prejudice of her counterclaims for intentional infliction of emotional distress, defamation, invasion of privacy, and abuse of process in a diversity suit brought by appellee Robert Charles Davis. Ms. Norris has also filed a motion to strike and for sanctions and a motion for reconsideration of our order allowing Mr. Davis to file his response brief out of time. Our jurisdiction arises under 28 U.S.C. § 1291, and we grant Ms. Norris's motions, reverse, and remand for further proceedings.

## I. Relevant facts and proceedings

The litigation between the parties has a long and tortured history, beginning in 1987 when Ms. Norris alleged that Mr. Davis, who was her neighbor, sexually assaulted her on two different occasions in Salt Lake City, Utah. She brought a civil suit against him for assault in Utah state court in 1987. Mr. Davis claimed that their sexual encounters were consensual, and he filed a counterclaim for defamation of character, asserting that Ms. Norris had abused the justice system by pursuing a meritless lawsuit. The litigation was bitter, and Mr. Davis threatened to "get" Ms. Norris. Aplt. App. at 242. In 1988, Mr. Davis obtained an injunction in the state case prohibiting Ms. Norris from communicating information regarding the alleged sexual assault to the media pending the case's outcome. During discovery, Mr. Davis's attorneys obtained Ms. Norris's

-2-

confidential psychiatric records. The state court ordered that they were to remain confidential and not to be disseminated beyond use by the experts in the Utah state case.

In 1993, Mr. Davis was convicted of Medicare/Medicaid and insurance fraud in conjunction with his practice as a physician and was sentenced to federal prison. The parties apparently agreed to stay Ms. Norris's tort action until his release except for the taking of his deposition.

Mr. Davis had been the subject of news reports in Utah because of the fraud convictions and because three women besides Ms. Norris had sued him for sexual assault. Numerous articles were published about his alleged illegal activities between 1989 and 1994. In 1994, an article for which Ms. Norris was interviewed was published in a Salt Lake City, Utah, newspaper. In it, Ms. Norris discussed the fact that her suit for assault against Mr. Davis was pending and that she was aware of four other women who claimed he had sexually assaulted them.

In June 1995, in federal district court in California, Mr. Davis sued Ms. Norris for libel and slander arising from the publication of this interview and for allegedly fraudulently conveying unspecified assets out of her name. Mr. Davis claimed that Ms. Norris sent a copy of the 1994 article to the federal prison where he was incarcerated and that he suffered loss of privileges and

a transfer to a higher security prison as a result. [1] He had Ms. Norris served with process while she was attending a pretrial conference for the Utah state case in September 1995. One month later Mr. Davis filed a second federal suit in Arizona, asserting the same claims. He had this complaint served when Ms. Norris attended a pretrial hearing in the state case in October 1995. In November 1995, Ms. Norris moved for dismissal of the federal suits and for summary judgment, asserting lack of personal and subject matter jurisdiction and improper venue. She also contended that Mr. Davis had already brought the same claims as counterclaims in the Utah state court case and that Mr. Davis failed to state a claim on which relief could be granted. The California federal district court did not rule on the merits of the motion to dismiss, instead transferring the case to the federal district court in Utah in 1996. The Arizona case was dismissed in 1996 for want of prosecution.

Ms. Norris moved from Utah in the 1990s and obtained unlisted phone numbers in what she alleges was an attempt to escape Mr. Davis's continuing harassment. While he was in prison, Mr. Davis used a federal subpoena issued without Ms. Norris's knowledge to obtain her private records from Delta Airlines

---

[1] Ms. Norris requested the district court take judicial notice of Mr. Davis's § 1983 suit against the prison warden brought in 1994, in which he alleged that these disciplinary actions were due to retaliation by prison officials for his attempts to obtain medical treatment and because he protested restrictions upon his use of the telephones in prison.

going back fifteen years. He used a subpoena from the state court case without her knowledge to obtain private information from a former Florida landlord. He also acquired credit reports and social security records concerning Ms. Norris's location and employment history. In September 1995, Mr. Davis began calling and writing letters to various individuals, including Ms. Norris's ex-husband, her employers, landlords, attorneys, probation officer, attorneys representing other individuals in suits against Ms. Norris, the Internal Revenue Service, and the bankruptcy court in Knoxville, Tennessee. In these letters Mr. Davis alleged, *inter alia*, that Ms. Norris used false social security numbers to avoid tax liens and secure credit, committed fraud in the bankruptcy court, committed mail fraud, misrepresented her credentials for employment, committed crimes against various companies and individuals, had been married to her brother, and had violated her probation. He also sent copies of her twenty-year-old confidential psychiatric reports that had been sealed in the Utah state court proceeding to various individuals and attached them to his amended complaint in his California federal action.

At her state trial on the 1987 assault claim in January 1997, Ms. Norris attempted to introduce into evidence the above-described letters written by Mr. Davis. The state court excluded the evidence as irrelevant to the alleged assault. The jury returned a verdict in favor of Mr. Davis on Ms. Norris's assault

claims and in favor of Ms. Norris on Mr. Davis's counterclaims. On October 8, 1997, Mr. Davis moved to voluntarily dismiss his federal action in Utah.

On October 10, 1997, Ms. Norris filed a counterclaim in Mr. Davis's federal suit in which she alleged intentional infliction of emotional distress, defamation, invasion of privacy, and abuse of process arising from Mr. Davis's letters and communications written in 1995-1996. Mr. Davis did not timely respond to the counterclaims and the court granted a default judgment in favor of Ms. Norris in November 1997.

Mr. Davis obtained counsel and moved to set aside the entry of default, claiming that he had not received service of the counterclaims. In a lengthy order entered August 25, 1998, the district court denied Mr. Davis's motion to voluntarily dismiss the suit and granted his motion to set aside the default judgment on Ms. Norris's counterclaims. The court also dismissed Mr. Davis's complaint for failure to state a claim, concluding that (1) the amended complaint did "nothing more than set forth a litany of allegations against the defendant that have no relevance to the case at hand"; (2) his allegations were "nowhere close to stating a cause of action" for libel or slander; and (3) the complaint was deficient because it failed to state any cause of action with particularity under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Aplt. App. at 270-71. Because Mr. Davis's claims that Ms. Norris lied about the alleged sexual assault had

already been addressed in the Utah state court, the district court concluded that allowing him to amend his complaint a second time would not correct the defects of his complaint. [2]  *Id.* at 271-72.

In December 1998, Ms. Norris moved to reinstate the default judgment on her counterclaims as a sanction for Mr. Davis's failure to comply with the court's order to submit to a deposition.  Mr. Davis later filed a motion to dismiss the counterclaims, alleging that they were barred by the doctrine of res judicata and/or the statute of limitations.  The court denied Ms. Norris's motion and granted Mr. Davis's, concluding that "[t]he basis for the allegations in the counterclaim all arise out of the same transactions or series of events, that lead to the initial suit in state court between these parties."     *Id.* at 258.  The court also held that Utah law applied to the statute-of-limitations issue and concluded that the claim for defamation could not survive Utah's one-year limitations period. Ms. Norris appeals from both rulings.

## II.  Discussion

### A.  Motion to strike appellee's motion to dismiss

As a preliminary matter, we address Ms. Norris's motion to strike Mr. Davis's motion to dismiss the appeal and her request for attorney fees and

---

[2]     Mr. Davis has not appealed from any of these rulings.

costs as a sanction. A review of the record shows that Ms. Norris filed her appellate brief on June 1, 2000, certifying that she mailed two copies of the brief to Mr. Davis on May 18, 2000. When this court had not received Mr. Davis's response brief by July 1, 2000, the clerk notified him on July 31, 2000, that no brief had been received and that he had ten days in which to file one. Mr. Davis did not timely file a response brief. Instead, on July 31, 2000, he filed a motion to dismiss the appeal. In the motion, Mr. Davis asserted that the appeal should be dismissed because he had filed for Chapter 13 bankruptcy proceedings.

Ms. Norris responded that she had never been included on a list of bankruptcy creditors as a party with claims against Mr. Davis or notice of the bankruptcy, but agreed that federal law required that the appeal be stayed pending termination of the bankruptcy proceedings. Accordingly, we abated the appeal on December 15, 2000, ordering the parties to submit status reports on the bankruptcy proceedings by February 15, 2001. Mr. Davis did not comply with this order. Ms. Norris submitted a timely report after discovering that the bankruptcy court had dismissed Mr. Davis's bankruptcy case on **June 5, 2000**, in response to his June 2, 2000 application for voluntary dismissal. The record shows that the bankruptcy court gave Mr. Davis written notice of that dismissal by mailing a notice to his home address on June 8, 2000.

Copies of Ms. Norris's February status report were sent to Mr. Davis at two addresses--his home address and a Mailboxes, Etc. facility where he purportedly received his business mail. Ms. Norris informed Mr. Davis in a cover letter attached to the status report that she would be filing a motion to strike the motion to dismiss and for sanctions the next week. After this court received the status report, the clerk's office entered an order on April 30, 2001, reactivating the appeal and informing Mr. Davis that his response brief was due May 30, 2001. That notice was sent to the Mailboxes, Etc. address.

On May 4, 2001, Ms. Norris filed her motion to strike Mr. Davis's motion to dismiss, requesting this court disallow the filing of a response brief, to enter judgment in her favor on the appeal, and to award sanctions in the form of attorney fees and costs in the amount of $4,146.64 for having to respond to the motion. Ms. Norris's counsel submitted itemized bills and affidavits. Ms. Norris mailed a copy of the motion both to Mr. Davis's Mailboxes, Etc. address and to his home address on May 3, 2001. Mr. Davis did not respond to the motion.

Ms. Norris's motion is well-taken. The record clearly shows that Mr. Davis filed the motion to dismiss the appeal in this court after he knew that the bankruptcy court had already dismissed his bankruptcy case at his request. Mr. Davis therefore made material and fraudulent misrepresentations to this court.

Mr. Davis attempts to excuse this misrepresentation by arguing that he signed the motion to dismiss on May 28, 2000, before his bankruptcy proceedings were dismissed. However, the motion to dismiss is clearly dated "this 23rd day of July, 2000" above his signature and was filed in this court on July 31, 2000. Mr. Davis's motion to dismiss is stricken as frivolous, and sanctions in the amount of $4,146.64 are awarded to Ms. Norris. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (noting court's inherent power to assess attorney fees as sanction against party who has conducted litigation in bad faith); *Christensen v. Ward*, 916 F.2d 1462, 1469 (10th Cir. 1990) (recognizing court of appeals' "inherent power to impose sanctions that are necessary . . . to deter frivolous filings").

**B. Motion to strike response brief**

On August 22, 2001, Mr. Davis filed a motion to file out of time his response brief to the original appeal. In his motion, he claimed that he had not received our April 30, 2001 order requiring that his brief be filed by May 30, 2001, until August 17, 2001. He attached an affidavit from one of his employees stating that on that date, Mailboxes, Etc. had placed a notice to pick up an oversized envelope in Mr. Davis's box. The affidavit states that the "envelope" was in fact a stack of mail that had been "misplaced" by Mailboxes, Etc.

The affidavit states that Ms. Norris's "appeal brief along with the Order . . . filed April 30, 2001" was in the stack.

We note, however, that the notice states only that there was **an** envelope too large for the mailbox that Mr. Davis needed to pick up at the counter. The clerk's practice is to mail single or two-page orders in regular envelopes and not in oversized envelopes, and the clerk did not include Ms. Norris's brief, which was filed in June 2000 and separately mailed to him by Ms. Norris in May 2000, with that order. It is highly unlikely that (1) Mailboxes, Etc. would have held Ms. Norris's appeal brief for over a year before it gave him notice to pick it up; or (2) that our April 30, 2001 order was the "item" described in the August 17, 2001 Mailboxes, Etc. notice; or that (3) Mr. Davis would not inquire with this court whether filings of which he was unaware had been made, given Ms. Norris's notice to him that she had informed this court of the dismissal of the bankruptcy proceedings and that she was filing motions to strike and motions for sanctions. We further note that Mr. Davis never responded that he had not received Ms. Norris's appeal brief when this court first notified him in July 2000 that we had not received his response brief. We find it curious that Mr. Davis has so much difficulty receiving legal mail and observe that he has not rebutted the affidavit filed by his former employee stating that Mr. Davis regularly instructed his employees not to accept legal mail or service of process.

The panel that granted Mr. Davis's request to file his response brief out of time did not consider Ms. Norris's previously-filed motion to strike or her request that we disallow a response brief. We grant Ms. Norris's motion to reconsider our order allowing Mr. Davis to file the response brief out of time. We strike his response brief for failing to comply with our July 31, 2000 order to file a response brief within ten days, for failing to comply with our December 15, 2000 order to submit a status report on the bankruptcy proceedings by February 15, 2001, for failure to comply with our April 30, 2001 order instructing him to file a response brief by May 30, 2001, and as a sanction for having delayed the appeal proceedings for over a year by filing the fraudulent motion to dismiss.

We deny Ms. Norris's motion to file her reply brief out of time as moot.

**C. Appeal of the order dismissing Ms. Norris's counterclaims**

**1. Res judicata.** We next turn to the substantive issues in this case. The district court dismissed Ms. Norris's counterclaims by concluding that she could and should have brought all of her counterclaims in the 1987 Utah state court action. We review the court's application of *res judicata* de novo. *King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir. 1997).

We look to Utah law to determine the preclusive effect to be given the judgment entered in the state civil-assault action. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985) (stating that a federal court of

-12-

appeals must refer to state law to determine the preclusive effect of a prior state judgment between parties on the subsequent federal suit); *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997) (same). Under Utah law,

> [c]laim preclusion applicability . . . requires that the claim, even though not decided in the prior action, could and should have been litigated, but was not raised by any of the parties. This "reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Restatement (Second) of Judgments § 24 comment a (1982).

*Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1357 (Utah Ct. App. 1990). Thus, it appears that Utah follows the transactional approach of the Restatement (Second) of Judgments § 24. "The transactional test has been rearticulated by courts in a variety of ways, most of which focus upon whether the two suits are both based upon a discrete and unitary factual occurrence." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999).

In *Schaer v. State ex rel. Utah Department of Transportation*, 657 P.2d 1337 (Utah 1983), the Utah Supreme Court held that *res judicata* was not applicable to bar a subsequent suit between the same parties because it was based on a different claim than that of the previous litigation; the two causes of action rested on a different state of facts and occurred during completely different and separate time periods; and evidence of a different kind or character was necessary to sustain the two causes of action. *Id.* at 1340.

Ms. Norris argues that the district court improperly applied *res judicata* to dismiss her counterclaims because Mr. Davis's actions in making allegedly libelous and slanderous communications, invading her privacy, sending her confidential psychiatric records to individuals, abusing the federal judicial process by bringing frivolous and meritless suits against her for the sole purpose of harassment, and intentionally causing her emotional distress occurred in 1995-1996 and were not part of the alleged assault. We agree. Clearly, these subsequent tortious acts were not part of the alleged assault leading to Ms. Norris's civil suit in 1987. The events do not overlap in a single operative fact. Further, they are not related in time, space, origin, or motivation, as the events giving rise to Ms. Norris's counterclaims occurred at least seven years after Ms. Norris filed her state complaint. Because under Utah state law Ms. Norris's counterclaims would not be barred under the doctrine of *res judicata* as applied in *Schaer, supra*, we hold that the court erred in dismissing those claims.

**2. Statute of Limitations.** Finally, we address Ms. Norris's argument that the district court erred in holding that Utah's one-year statute of limitations, rather than Florida's two-year statute of limitations, should apply to her defamation claims. We review the district court's choice of law determination

-14-

de novo. *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994).

Below and on appeal, both parties assumed that Utah's choice of law rules would govern the determination of whether Utah or Florida law (or even the law of some other state) supplies the statute of limitation relevant to Ms. Norris's defamation claim. Ordinarily, the parties would have been quite correct in this assumption. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in [a particular State] must conform to those prevailing in [that State's] state courts."); *Rocky Mountain Helicopters*, 24 F.3d at 128 ("In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which [the federal court] is sitting.").

In such a case, the choice of law determination would have been relatively straight-forward: "Utah follows the majority position that limitation periods are generally procedural in nature. Therefore, as a general rule, Utah's statutes of limitation apply to actions brought in Utah." *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994) (internal citation omitted). Assuming that no particular exception applies, and we are unaware of one that would, Utah's choice of law rules dictate the use of Utah's one-year statute of

limitations. This one-year statute of limitations would leave Ms. Norris's claim time-barred.

Here, however, the situation is somewhat more complex. This action was originally filed not in federal district court in Utah but in federal district court in California. In such a situation, we must look to the choice of law rules of that State in which the suit was originally filed (i.e., the choice of law rules of California), *unless* the federal court in which the suit was originally filed never enjoyed personal jurisdiction over the defendant. *See Van Dusen v. Barrack*, 376 U.S. 612, 635-39 (1964) ("We conclude . . . [that] the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (creating the lack of personal jurisdiction exception). Here, then, because Mr. Davis originally filed this suit in California, the parties should have been examining California choice of law rules, unless the federal district court in California never maintained personal jurisdiction over Ms. Norris.

If the California federal district court indeed lacked personal jurisdiction over Ms. Norris, then the Utah federal district court was correct to look to Utah's choice of law provisions, choose Utah's one-year statute of limitations, and dismiss Ms. Norris's defamation claim. If, however, the California federal

-16-

district court did maintain personal jurisdiction over Ms. Norris, then the Utah federal district court should have examined California's choice of law provisions for selection of the applicable statute of limitation.  Since determination of whether the California federal district court exercised proper personal jurisdiction over Ms. Norris appears to remain an open question, and one which will likely require certain factual findings, we remand to the Utah federal district court for a determination on that issue and thus also for a determination of the statute of limitations issue.

The judgment of the United States District Court for the District of Utah is REVERSED and REMANDED for further proceedings.

Entered for the Court

Robert H. Henry
Circuit Judge
